Cite as 2022 Ark. App. 193

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-164

|  |  |
|---|---|
| | **Opinion Delivered** May 4, 2022 |
| HEMP HEALTH, LLC; IZARD HEALTH, LLC; LINWOOD HOLDING, LLC; AND CARE HOLDING, LLC<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES; CINDY GILLESPIE, DIRECTOR OF THE ARKANSAS DEPARTMENT OF HUMAN SERVICES; CECILIA VINSON, DIRECTOR, OFFICE OF LONG TERM CARE; JERALD SHARUM, DIRECTOR, DIVISION OF PROVIDER SERVICES & QUALITY ASSURANCE<br><br>APPELLEES | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION<br>[NO. 60CV-19-8631]<br><br>HONORABLE MARY SPENCER MCGOWAN, JUDGE<br><br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellants Hemp Health, LLC; Izard Health, LLC; Linwood Holding, LLC; and Care Holding, LLC, appeal from a decision of the Pulaski County Circuit Court dismissing this case as moot. We affirm.

Hemp and Izard filed a petition for judicial review or, in the alternative, complaint for declaratory judgment and complaint for injunctive relief against the Arkansas Department of Human Services and three officials in their official capacities (collectively

"DHS").[1]  Hemp and Izard had filed change-of-ownership applications with DHS's Office of Long Term Care (OLTC) seeking to transfer operational control, ownership, and licensure of two skilled nursing facilities, Oaklawn Estates, LLC, and Diamond Cove, LLC.  The applications listed Christopher Brogdon as the manager of Hemp and Izard and Cathy Parsons as the operator and member of Oaklawn Estates and Diamond Cove.  In November 2019, OLTC denied the applications.  Hemp and Izard alleged in their petition to the circuit court that the denial was arbitrary and capricious, contrary to the law, exceeded the authority granted under the law, was based on clear errors of fact and law, abused reasonable discretion, and violated their substantive rights.  They sought a judgment, writ, or order that invalidated the denial and enjoined DHS and its directors from denying the applications without cause.

DHS filed a motion to dismiss the petition for the following reasons: (1) the complaint is moot and presents no justiciable issue; (2) the court lacks subject-matter jurisdiction; (3) petitioners failed to join necessary parties; (4) petitioners' claim for costs and attorney's fees is barred by sovereign immunity; and (5) the complaint fails to state any facts upon which relief may be granted against DHS and asserts no cause of action.  Regarding the mootness allegation, DHS claimed that a change of ownership of the facilities could no longer be completed because Cathy Parsons had unilaterally closed both facilities and

---

[1]The three officials were Cindy Gillespie, director of the Arkansas Department of Human Services; Cecilia Vinson, director of the Office of Long Term Care; and Jerald Sharum, director of the Division of Provider Services and Quality Assurance.

2

surrendered her long-term-care licenses for them; accordingly, the licensed beds returned to the control of the Arkansas Health Services Permit Agency.

Prior to a ruling on the motion to dismiss, Hemp and Izard filed an amended petition adding facts discovered from email correspondence obtained through the Freedom of Information Act. They alleged that rather than reviewing the applications on their merits, DHS employees acted arbitrarily, capriciously, and in bad faith in their denial of the applications and their subsequent acceptance of Parsons's surrender of the facility licenses. For instance, Hemp and Izard alleged that, contrary to what was asserted in OLTC's denial letter, Hemp and Izard did, in fact, provide all requested information and offered to continue providing additional documentation upon request. Hemp and Izard alleged that, despite DHS's statutory duty to maintain the status quo pending the appeal, DHS worked duplicitously with Parsons to terminate the facility licenses, return the beds to the pool, and "then utilize these underhanded tactics to undermine" Hemp and Izard's ability to protect their rights under Arkansas law. Hemp and Izard claimed that DHS accepted the license surrender even though it had "multiple other options" to maintain the status quo. They asserted that DHS should not be allowed to benefit from its own bad acts.

DHS renewed its motion to dismiss, asserting the same grounds as in the first motion. DHS maintained that no controversy currently exists between the parties regarding the applications because Parsons voluntarily surrendered her licenses when the facilities closed, upon which the continuity of the licenses expired, and the availability of the licensed beds returned to the Arkansas Health Services Permit Agency.

A hearing was held on both the amended motion to dismiss and a motion to intervene filed by appellants Linwood Holding, LLC, and Care Holding, LLC, which owned the buildings housing the nursing facilities. The motion to intervene was granted. DHS argued that the case was moot because of the unilateral actions of Parsons, who was not made a party to the case, and DHS could not stop her from surrendering her licenses. Hemp and Izard alleged that DHS violated the statutory mandate to maintain the status quo after the lawsuit was filed by working with Parsons and encouraging her in her pursuit to surrender the licenses. Hemp and Izard claimed that DHS did not have to accept the surrender of the licenses.

The circuit court found in its order that Hemp and Izard's claims are nonjusticiable because no actual or real controversy currently exists between the parties regarding the applications. The court found that due to the unilateral actions of Parsons, the licenses for both Diamond Cove and Oaklawn Estates no longer exist, and thus, any judgment rendered now would have no practical effect upon any existing legal controversy. Accordingly, the court dismissed the amended complaint as moot.[2]

Generally, an issue is considered moot if any judgment or opinion issued by the court would have no practical effect upon a then existing legal controversy. *Gillespie v. Brewer*, 2019 Ark. App. 275, 577 S.W.3d 59. A case becomes moot if a controversy ceases to exist between

---

[2]Although the circuit court dismissed the amended complaint without prejudice, we have jurisdiction to hear the appeal pursuant to Rule 2(a)(2) of the Arkansas Rules of Appellate Procedure–Civil. *See Magness v. Graddy*, 2021 Ark. App. 119, at 7 n.1, 619 S.W.3d 878, 883 n.1.

the parties at any stage of the legal proceedings, including the appeal. *Id.* We do not render advisory opinions, and an opinion rendered on an issue that is moot would be advisory. *Id.* On appeal, the question as to whether there was a complete absence of a justiciable issue shall be reviewed de novo on the record of the circuit court. *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002).

Arkansas Code Annotated section 20-10-212 (Repl. 2018) provides as follows:

(a) Any applicant or licensee who is aggrieved by any decision of the Office of Long-Term Care with respect to the denial, suspension, or revocation of any long-term care facility license or long-term care facility administrator license or other final decision of the office with respect to standards of construction, operation, or maintenance of long-term care facilities or long-term care facility personnel or employees may appeal within thirty (30) days the decision of the office to the Pulaski County Circuit Court or to the circuit court of any county in which the applicant or licensee resides or does business.

(b) Pending determination of the matter on appeal, the status quo of the applicant or licensee shall be preserved.

Appellants argue that pursuant to the statute, they have an express right to judicial review, and OLTC has the statutory obligation to protect that right by preserving the status quo pending appeal. They argue that OLTC violated the statute by accepting Parsons's voluntary closure and licensure surrender and by failing to exercise its authority to preserve the licenses pending appeal. Appellants also claim that OLTC precluded appellants from taking action to preserve the licenses pending appeal by refusing to accept any other change-of-ownership applications. DHS argues that it took no action to change the status quo of the applicants; instead, Parsons took unilateral action by surrendering the licenses, and as a

5

result, the licenses no longer existed. DHS contends that because Parsons was not a party to the case, there was nothing preventing her from surrendering the licenses.

Items attached to the complaints and motions to dismiss show what transpired after the denial of the applications. Brogdon had already begun operating the facilities while the applications were pending. In a December 2, 2019 phone call with DHS, Brogdon stated that he would no longer operate the facilities, and he indicated that Parsons was not cooperating with him. Todd Luth, the managing member of the intervenors, had a phone call with DHS on December 3, 2019, in which he stated that Brogdon had appealed the denial of the applications. Luth brought up submitting a new application to transfer the licenses from Parsons, but he was informed that as long as Brogdon's appeal was in litigation, the change-of-ownership process was on hold, and no other application on the facilities could be started.

In other correspondence, DHS wrote that Parsons told OLTC that she did not have the money to take the facilities back after Brogdon told her he was pulling out; furthermore, Luth had evicted Parsons from the facilities due to delinquent lease payments. Parsons's attorney wrote to DHS in a December 4, 2019 email that Parsons had been unable to secure access to the homes to confirm appropriate care for the residents, and she was working with the facilities' administrators to move residents to other facilities. Subsequent correspondence from Parsons's attorney stated that Parsons was voluntarily closing the facilities. DHS asked whether Parsons also wished to voluntarily surrender her licenses for

6

those facilities, which would remove any consequences related to statements of deficiencies. Parsons's attorney stated that Parsons wanted to voluntarily surrender her licenses.

Thus, contrary to appellants' assertions, it was not DHS action that resulted in the closing of the facilities and Parsons's surrender of her licenses but rather a breakdown in the business dealings between Parsons, Brogdon, and Luth. DHS could not force Parsons to stay in business when she could not afford to and had been evicted from the premises. After closing the facilities, Parsons chose to surrender the licenses. There is nothing to indicate that DHS could refuse to accept surrender of the licenses and instead require Parsons, who is not a party to the litigation, to maintain the licenses. DHS's position that it would not accept other change-of-ownership applications during the appeal acted to protect the status quo of the applicants, Hemp and Izard. Had DHS approved subsequent applications, this would have changed the status quo of the initial applicants. In their reply brief, appellants argue that DHS should have preserved the status quo by appointing a receiver for the facilities pursuant to Arkansas Code Annotated sections 20-10-901 et seq. (Repl. 2018 & Supp. 2021). However, because this argument is made for the first time in the reply brief, we will not consider it. *See Orintas v. Point Lookout Prop. Owners Ass'n Bd. of Dirs.*, 2015 Ark. App. 648, 476 S.W.3d 174.[3]

---

[3]DHS has filed a motion to strike portions of appellants' reply brief seeking to strike arguments made for the first time in the reply brief. We hold that the motion is now moot.

Appellants claim that there remains a legal controversy upon which the court's decision would have a practical effect, namely financial implications for the appellants. They argue that if forced to apply for new operator licenses as opposed to being granted licenses via their transfer applications, a substantial investment is required, and other factors come into play that may restrict their ability to obtain the licenses. DHS maintains that any determination on the change-of-ownership applications is moot because the licenses no longer exist. We agree. A decision that DHS improperly denied the change-of-ownership applications could not result in a transfer of the licenses because they no longer exist. Accordingly, we affirm the circuit court's determination that the case is moot.[4]

Affirmed.

GLADWIN and HIXSON, JJ., agree.

*Kutak Rock LLP*, by: *Samantha Blassingame*, for appellants.

*David Warford* and *Richard Rosen*, Office of Chief Counsel, for appellees.

---

[4]Although both parties also address whether the circuit court had subject-matter jurisdiction, the supreme court has said that our courts will not issue advisory opinions, even on subject-matter jurisdiction. *See Arkansans for Healthy Eyes v. Thurston*, 2020 Ark. 275. The issue of subject-matter jurisdiction is moot because our judgment would have no practical legal effect on an existing controversy. *Id.*