Cite as 2025 Ark. App. 122

# ARKANSAS COURT OF APPEALS

## DIVISION II
No. CV-22-790

| | |
|---|---|
| LISA CRAIN; CATHEE CRAIN; MARILLYN CRAIN BRODY; AND KRISTAN CRAIN SNELL, DERIVATIVELY ON BEHALF OF REGIONAL JET CENTER, INC.<br>APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br>SHIRLEY CRAIN AND REGIONAL JET CENTER, INC.<br>APPELLEES/CROSS-APPELLANTS | Opinion Delivered February 26, 2025<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-20-2780]<br><br>HONORABLE THOMAS SMITH, JUDGE<br><br>REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## STEPHANIE POTTER BARRETT, Judge

This appeal arises from a shareholder derivative action filed by appellants/cross-appellees Lisa Crain; Cathee Crain; Marillyn Crain Brody; and Kristan Crain Snell (collectively, "the Crain Sisters"), derivatively on behalf of Regional Jet Center, Inc. ("RJC"), against appellants/cross-appellees Shirley Crain ("Shirley") and RJC. The Benton County Circuit Court granted summary judgment in favor of Shirley, denied the Crain Sisters' motion to distribute recovered funds, awarded the Crain Sisters' attorneys' fees and costs to be paid by RJC, and awarded RJC interest to be paid by Shirley. The Crain Sisters argue on appeal that the circuit court erred in granting summary judgment and dismissing the derivative complaint. They also argue that the circuit court erred in denying their request for a distribution of money recovered by RJC in connection with the derivative action. In

separate cross-appeals, Shirley challenges the award of interest to RJC, and RJC challenges the award of attorneys' fees and costs to the Crain Sisters. We agree that the circuit court erred in granting summary judgment in favor of Shirley and erred in denying the Crain Sisters' motion to distribute the recovered funds; therefore, we reverse and remand for further proceedings on direct appeal. On cross-appeal, we affirm the award of attorneys' fees and costs to the Crain Sisters and the award of interest to RJC.

I. *Facts and Procedural History*

RJC is a closely held Arkansas corporation that provides fixed-based operating services to the Northwest Arkansas Regional Airport Authority. In 2001, H.C. "Dude" Crain, Jr., gave each of the Crain Sisters—his four daughters from his first marriage—five hundred shares (or one-sixth) of the three thousand issued and outstanding shares of RJC. Collectively, the Crain Sisters own two thousand (or four-sixths) of the total outstanding shares, but their shares are Class B nonvoting shares. Dude and his second wife, Shirley, maintained five hundred shares, but theirs are the only Class A voting shares. Shirley's adult son, Brian Pope, was given the remaining five hundred Class B nonvoting shares. Shirley took over the company after Dude died in 2017 and, as the sole director and voting shareholder, has been the sole decision-maker ever since.

In 2019, Shirley notified the Crain Sisters that they would receive only a $25,000 quarterly distribution as opposed to what had become a standard $75,000 quarterly distribution. According to the Crain Sisters, Shirley later informed them that the $25,000 distribution would be the final distribution made to them and that they were being

2

terminated from employment with RJC. In 2020, the Crain Sisters, through counsel, requested RJC's financial records. Shirley thereafter acknowledged that the Crain Sisters were, in fact, shareholders of RJC and entitled to distributions, and the distribution issue was cured the following quarter. Ultimately, the Crain Sisters received some, but not all, of the corporate financial records they requested from RJC. They hired an accountant to review the records they did receive, and the accountant discovered large increases in the expense categories for management fees and travel expenses paid by RJC in 2019. The Crain Sisters, through their attorney, sent a letter to Shirley stating as follows:

1. [The Crain Sisters] demand that the sole Director and Officer of RJC, Shirley Crain, recover from herself for RJC, the $1.4 million management fee paid to her for tax year 2019, as they have no evidence that it is a reasonable expense of the RJC operation.

2. Because no written contracts nor support for the following payments have been provided as ordinary and necessary expenses of RJC, they demand that Shirley Crain, for RJC, recover from the owner of the property on which the detailed work was performed, all expenses paid and travel expenses repaid:

   a. To Lee Jackson Construction Co., Inc. as detailed in attached list (Exhibit 1).

   b. Travel expenses of $139,290 in 2019 (increased from $7,599 in 2018).

3. On July 20, 2020, my clients received a letter from Shirley Crain dated July 15, 2020, copy attached as Exhibit 2, stating that no RJC dividends would be paid for 18 months due to economic situation. No other support for this position in statistics, projections, etc. was provided. Based upon the absence of information, they demand that Shirley as sole Director and Officer continue to distribute $75,000 each calendar quarter to each shareholder. They have consistently received quarterly distributions since 2001.

3

According to the Crain Sisters, they subsequently asked for, but did not receive, additional information from RJC.

On December 18, 2020, the Crain Sisters filed a verified shareholder derivative complaint pursuant to Arkansas Code Annotated section 4-27-740 (Repl. 2016) and Arkansas Rule of Civil Procedure 23.1. They alleged in the derivative complaint that Shirley grossly mismanaged RJC, engaged in self-dealing transactions and corporate waste, and breached fiduciary duties owed to RJC:

(a) In 2019, approving the payment of a "management fee" from RJC to herself (or a company owned entirely by her) in the amount of one million three hundred eighty thousand dollars ($1,380,000.00) This was the first management fee RJC ever paid.

(b) In 2019, Shirley approved a payment to herself in the amount of $15,000.00 for what she described as a "Director's Fee."

(c) At the same time as Shirley Crain approved a management fee paid to herself in the amount of $1.38 million, she also authorized a management fee paid to Dude, Inc., in the amount of $25,000.00. According to records of the Arkansas Secretary of State, Shirley Crain is an officer in Dude, Inc.

(d) After paying herself a $1.38 million management fee in 2019, on December 19, 2019, Shirley Crain reduced the quarterly distributions to the Plaintiffs from the historical norm of $75,000 to $25,000. While reducing the Plaintiffs' quarterly distributions, Shirley Crain maintained the historical rate for herself and her son (Brian Pope), the only other Class B shareholder (besides the Plaintiffs).

(e) Used corporate funds to pay Lee Jackson Construction, a residential contractor. The amount paid to Lee Jackson Construction does not match the invoices submitted by Lee Jackson Construction. Based on information and belief, Shirley Crain is a close friend with Lee Jackson.

4

(f) From 2014–2018, the total amount of RJC travel expenses equaled $62,085.00 (annual average of $12,417). However, in 2019 alone, RJC reported travel expenses in the amount of $139,290.00.

They further alleged that Shirley had disregarded corporate formalities and legalities as follows:

24. Shirley Crain has previously allowed the RJC's Corporate Charter to be forfeited for failure to pay its franchise taxes. *See* Ark. Code Ann. § 26-54-111.

25. Shirley Crain has neglected to notify shareholders of annual shareholders' meetings and failed to provide requested corporate records.

26. By issuing unequal quarterly distributions to shareholders, Shirley Crain violated the Internal Revenue Service's regulations. Such a violation could result in loss of the RJC's status as a Subchapter S Corporation – resulting in the shareholders being "double taxed" – once at the corporate level and then at the personal level. *See* 26 C.F.R. § 1.1361-1 (L).

27. Shirley Crain did, by issuing to herself a $1.38 million "management fee" and a $25,000 management fee to Dude, Inc. (owned and controlled by Shirley), violate the IRS regulations regarding fair and reasonable compensation. As such, the IRS could disallow a deduction for the excessive compensation – resulting in substantial taxes, penalties, and interest, and forcing RJC and the shareholders to amend their returns. *See* 26 C.F.R. § 1.162-8.

28. Based on information and belief, Shirley Crain misclassified personal travel, meals, and other expenditures as corporate expenditures in violation of the Internal Revenue Code. Such a finding would result in the IRS finding that RJC misstated its Net Income as reflected on shareholders' previous K-1 Schedules resulting in the assessment of penalties and interest against each separate shareholder.

Regarding compliance with Arkansas Rule of Civil Procedure 23.1, the complaint stated:

34. As a result of the facts set forth herein, Plaintiffs have not made any demand on the Defendant to institute this action since demand would be a futile and useless act because the Defendant is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action. The wrongful acts complained of herein show multiple breaches by the Defendant of her fiduciary duties of loyalty, due care and oversight.

The derivative complaint sought judgment against Shirley for the following relief:

a. Determining that this lawsuit is a proper derivative action and certifying the Plaintiffs as appropriate representatives of RJC for this action;

b. Determining and awarding RJC damages for Defendant's knowing and deliberate breaches of fiduciary duties, disregard of corporate formalities, and waste of corporate assets in an amount to be determined at trial;

c. Determining and awarding RJC interest on any damages sustained as a result of the violations set forth above with full and unlimited contribution and indemnification for the benefit of RJC;

d. Awarding Plaintiffs the costs and disbursements of this action, including reasonable fees and costs to Plaintiffs' attorneys and experts;

e. Order Shirley Crain to, going forward, turn over on a monthly basis all ledgers, statements of accounts and check stubs to the shareholders of RJC;

f. Granting such other and further relief as the court deems just and proper.

On January 20, 2021, RJC, as the nominal defendant, moved to stay the action, pursuant to Arkansas Code Annotated section 4-27-740(b), due to its decision to commence an investigation of the factual allegations asserted in the derivative complaint to be conducted by independent attorney Jason Wales and one or more consultants. The parties

did not oppose the requested stay, and on March 10, the circuit court entered a stay pending the completion of Wales's investigation.[1]

Wales completed the investigation and, on June 11, 2021, issued a written report with his findings and recommendations. According to the report, Wales reviewed the derivative complaint and hired a CPA, Chris Bedwell, as a consultant to assist him with the investigation. Wales and Bedwell "received and reviewed numerous documents regarding RJC consisting of historical business records, income tax returns, bank statements, financial statements, and miscellaneous documents provided by the parties' attorneys" and "interviewed the plaintiffs (in the presence of Tim Hutchinson), Tim Thompson, and Shirley Crain (in the presence of Jeff Fletcher and Mark Moll)."

At the outset, the report states:

> Initially, I note there are 3,000 issued and outstanding shares of RJC. Ms. Crain owns 500 Class A voting shares of RJC. She receives a K-1 from RJC every year. Each of the plaintiffs and Brian Pope own 500 shares of Class B non-voting shares of RJC. Each of them also receives a K-1 form RJC every year. Each shareholder owns 16.67% of RJC; however, Ms. Crain is the only shareholder with the right to vote. Ms. Crain is the sole Director of RJC. There is no doubt that Ms. Crain owes fiduciary duties to RJC and its shareholders.

> I also note that Ms. Crain and each of the plaintiffs are employees of RJC. Each receives a small bi-weekly salary and various employment benefits. As employees of RJC, each person receives a W-2 from RJC every year.

---

[1]The circuit court denied Shirley's motion to dismiss on the grounds that the Crain Sisters failed to make a presuit demand on RJC's board of directors and failed to plead demand futility with factual particularity as required by Arkansas Code Annotated section 4-27-740(b). Shirley did not appeal that ruling, and the issue is not raised in this appeal.

The report then addresses the allegations made in the derivative complaint, stating Wales's findings as to the factual accuracy of each allegation and recommended courses of action for RJC. With respect to the management fees of $1.38 million to Shirley and $25,000 to Dude, Inc., as alleged in paragraphs 14(a) and (c) of complaint, Wales found the allegations to be factual, stating:

> There does not appear to be a defensible reason for RJC to have paid management fees to Ms. Crain or Dude, Inc. in 2019. In my opinion, Ms. Crain's actions in this regard do not satisfy Ark. Code Ann. § 4-27-830. []

> RJC should recover from Ms. Crain the $1,380,000 of management fees it paid her in 2019, and it should recover from Dude, Inc. the $25,000 of management fees RJC paid it in 2019.

Wales also found the allegations in paragraph 14(b) regarding the $15,000 "Director's Fee" Shirley paid herself to be factual. He recommended that "RJC should take no action" because Arkansas Code Annotated section 4-27-811 allows the board of directors to fix the compensation of directors, unless the articles of incorporation provide otherwise. Accordingly, he found that "Ms. Crain had the right to fix the amount of compensation paid to herself as a Director." He further found that "[t]he amount is not unreasonable considering the finances of RJC."

With respect to paragraphs 14(d) and 26 alleging that Shirley reduced the Crain Sisters' quarterly distributions in 2019 and kept the quarterly distributions at the same amounts for herself and her son, Wales found the allegation to be factual. The Crain sisters alleged that the unequal distributions jeopardized RJC's subchapter S status with the IRS and could result in the shareholders being "double taxed." Wales noted that "in Q1 2020

8

RJC made distributions to the plaintiffs so as to equalize shareholder distributions for the time period in question. At the time, shareholder distributions through Q1 2020 are in balance. There have been no shareholder distributions since Q1 2020." Accordingly, he recommended that "RJC should take no action except to ensure that any future shareholder distributions comply with applicable corporate governance documents and IRS regulations and, if made, are in the best interests of RJC."

Wales found that the allegations in paragraph 14(e) regarding the use of corporate funds to pay Lee Jackson Construction were "not factual." He noted that "RJC payments to Lee Jackson Construction match invoices submitted to RJC . . . [and] found nothing irregular or alarming about this issue other than Lee Jackson Construction charges a lot of money for its work like a lot of other contractors I know."

Paragraph 14(f) of the Crain Sisters' derivative complaint alleged that from 2014–2018, RJC had annual travel expenses of $12,417, but "in 2019 alone, RJC reported travel expenses in the amount of $139,290.00." Wales found that "[t]his allegation is partially factual." He recommended that RJC take no action, explaining that "RJC paid personal travel expenses of Ms. Crain totaling $92,589.03. Ms. Crain produced evidence indicating that she has reimbursed RJC for those payments. The remaining amount of travel expenses at issue appear to be for legitimate travel expenses incurred by employees of RJC and are not out of line at all with a business the size of RJC."

With respect to paragraph 24 alleging that Shirley has previously allowed RJC's corporate charter to be forfeited for failure to pay franchise taxes, Wales found that the

factual accuracy of the allegation was "[u]nknown." He noted that during the entire time of his involvement, "RJC's corporate charter has constantly been in good standing with the Secretary of State. Perhaps an oversight occurred that resulted in the company's charter being revoked for a short period of time at some point in the past. However, that issue has obviously been corrected. Even if it happened, Ms. Crain would be shielded from liability to RJC pursuant to Article VIII of the company's Articles of Incorporation." Thus, he recommended that "RJC should take no action other than review internal protocols to ensure its annual franchise taxes and other liabilities are paid in a timely manner."

In paragraph 25, the Crain Sisters alleged that Shirley "has neglected to notify shareholders of annual shareholders' meetings and failed to provide requested corporate records." Wales "found no evidence that any shareholder meetings have taken place." He explained:

> Considering Ms. Crain is the only shareholder with voting rights, I can't imagine why a shareholder meeting would even be necessary. Mr. Hutchinson pointed me to meeting minutes but those were minutes of Director's meetings. Mr. Hutchinson claimed that was form over substance because the minutes reflect the declaration of dividends, an act which falls only within the province of shareholders, not Directors. However, that is inaccurate. *See* Ark. Code Ann. § 4-27-640.

Accordingly, Wales recommended that "RJC should take no action."

On June 24, the Crain Sisters moved to lift the stay because Wales had completed his investigation and report. The Crain Sisters asserted that since the issuance of Wales's report on the investigation, Shirley had taken no steps to reimburse RJC the funds recommended

10

by Wales. They asked the court to lift the stay and permit them to engage in discovery and continue the prosecution of the derivative action.

On September 16, Shirley filed a response and asserted that at an August 6, 2021 "meeting of Director Shirley Crain of [RJC]" with General Manager Tim Thompson, she "advised that she had reimbursed [RJC] $1,405,000.00 pursuant to her agreement to follow the recommendation of attorney Jason H. Wales." Because she had fulfilled the recommendation outlined in Wales's report, Shirley maintained that there was no longer a case in controversy. On September 21, the circuit court entered an order lifting the stay.

On December 10, Shirley moved for summary judgment, arguing that the action should be dismissed as moot because the derivative claims had been "resolved by the adoption and implementation of the recommendations in the Wales Report, and there is no longer an existing case in controversy." She contended that because she reimbursed RJC all sums recommended in Wales's independent report, the derivative claims had been resolved by proper corporate governance; and the Crain Sisters, as derivative plaintiffs, had no "right or power to bless, agree with, dispute, or second-guess the corporation's resolution of the matter" or to "seize the steering wheel and put the case back on the litigation highway." She submitted with the motion four exhibits: (1) Wales's June 11, 2021 report; (2) the minutes of an August 6, 2021 director's meeting held on August 6, 2021, reflecting the board's adoption of the recommendations set out in Wales's report; (3) an August 2021 statement from RJC's First Security Bank account reflecting deposits by Shirley in the amount of $1.4 million on August 2 and in the amount of $15,000.00 on August 5; and (4)

11

and documentation of a February 26, 2021 wire transfer of $92,589.03 into RJC's Bank of America account for a "chartered flight" to Cape Canaveral in 2019. Shirley maintained that these actions resolved all existing allegations made by the derivative plaintiffs to the benefit of RJC.

In opposition, the Crain Sisters argued that Wales is not the final decision-maker and contended they had a right to challenge certain findings in Wales's report and to present evidence that the corporation has been harmed beyond what Wales found. They further contended that Wales did not provide a specific basis for certain conclusions and limited the scope of his investigation to only 2019. They argued that disputed issues remained to be decided—among other things, their dispute with Wales's finding that the payment of a $15,000 director's fee to Shirley in 2019 was reasonable and his recommendation that RJC take no action concerning this particular allegation. With their response to the summary-judgment motion, they submitted the minutes of a meeting of shareholders of RJC Class A stock reflecting that on February 4, 2020, Shirley was nominated and elected director of RJC. This evidence, as the Crain Sisters agued, directly contradicted Wales's finding because "any 'Director's Fee' paid in 2019 is per se unreasonable as she was not, in fact, a Director at that time."

The Crain Sisters also initially disputed Wales's finding that in 2020, RJC equalized the total amount of distributions by increasing the distributions issued to them. They contended that Wales's report did not address additional unreported compensation Shirley received in 2018, 2019, and 2020, evidence of which they purported to have discovered

12

sometime after they filed the derivative complaint.[2] This additional improper compensation, according to the Crain Sisters, "can only be categorized as distributions of profits that again jeopardize RJC's subchapter S status with the IRS." Additionally, the Crain Sisters asserted that while they do *not* dispute Wales's finding "that RJC only paid Lee Jackson for construction work performed on behalf of RJC,"[3] Wales's report "did not address other questionable expenditures to vendors including, but not limited to, $15,000 to a fabric store and thousands of dollars in 'landing fees.'"[4] Further, while the Crain Sisters agreed that Shirley had, in fact, reimbursed RJC for $92,589.03 of the $139,290 in travel expenses identified both in the derivative complaint and in Wales's report, they disputed Wales's finding that $46,701 categorized as travel expenses were legitimate business expenses on the ground that they had not been able to review the supporting financial records to determine the legitimacy of the travel expenses Wales attributed to RJC. They also disputed Wales's finding that there was no evidence that any shareholder meeting had taken place, pointing

---

[2]It appears that these new allegations of misappropriation are now the subject of a subsequent derivative proceeding the Crain Sisters initiated through a May 11, 2022 demand on RJC to investigate claims of newly discovered expenditures made while the instant action was still pending before the circuit court.

[3]At a later hearing on May 16, 2022, the Crain Sisters confirmed that they had received "some invoices of Lee Jackson which aren't really relevant here."

[4]Again, these new allegations regarding questionable expenditures appear to be the subject of a subsequent derivative proceeding and no longer at issue here.

to the February 4, 2020 meeting of shareholders of RJC Class A stock at which Shirley was elected director.[5]

Finally, the Crain Sisters argued that because Shirley was conflicted, RJC's board (Shirley) could not decide that the corporate harm alleged in the derivative complaint had been remedied simply because it adopted Wales's recommendation that Shirley refund RJC the roughly $1.5 million in management fees and personal travel expenses she was found to have improperly paid herself. According to the Crain Sisters, only an independent board or committee could decide whether Wales's investigation and report was sufficient and whether it was in the corporation's best interest to pursue the litigation or to petition the court to terminate the lawsuit, subject to the court's review and approval.

Shirley, on the other hand, maintained that the central issue was mootness and not whether only an independent board or committee could decide to terminate the derivative lawsuit. She further contended that the factually supported allegations made in the derivative complaint set the scope of Wales's investigation, and the complaint alleged misconduct occurring in 2019.

---

[5]The Crain Sisters alleged in the derivative complaint that Shirley failed to provide notice of shareholder meetings. A corporation is required to give notice only to shareholders entitled to vote at the meeting, unless this chapter or the articles of incorporation require otherwise. Ark Code Ann. § 4-27-705(a). Shirley is the only RJC shareholder with voting rights. To the extent that this is a derivative—as opposed to an individual—claim, it seems that notice was not required in these circumstances.

14

The circuit court agreed with the Crain Sisters that Wales's investigation alone was not binding. Accordingly, the court granted in part the Crain Sisters' request to conduct discovery and ordered Shirley and RJC to turn over all requested documents for the years 2018, 2019, and 2020. The court left open Shirley's motion for summary judgment, stating that once discovery was completed, "we can take [it] up if it's still moot then."

At a May 16, 2022 hearing, the Crain Sisters confirmed they had obtained all the requested discovery documents and all the records reviewed by Wales, including, among other things, a general ledger showing the expenses with corresponding expense categories and credit card statements. They also stated they had deposed RJC's general manager, Tim Thompson, concerning these records. Their review of the records, they alleged, led to the discovery of "significant evidence of misappropriation, not only by Shirley, but by other employees under Shirley's watch." They confirmed that on May 11, 2022, they sent a demand letter to RJC's counsel asking that RJC have an independent accountant do a full audit to investigate these newly discovered concerns. Beyond the new potential claims, which the Crain Sisters ultimately raised in the subsequent derivative proceeding, their argument in opposition to summary judgment essentially remained the same postdiscovery.

At a June 20, 2022 hearing, the circuit court ruled from the bench that it would grant Shirley's motion for summary judgment, in pertinent part, as follows:

> [T]he only issue for this Court, based on what we learned from the discovery that was done – and I think we did it rightfully so. That the original claim was paid. Through that discovery, we've learned this other issue hasn't been raised, and to be compliant with that statute, you have to make a separate demand, separate investigation, and then decide if we're going to go there.

15

On July 1, 2022, the Crain Sisters filed a motion to distribute recovered funds and for injunctive relief, requesting the court to order the $1.5 million recovered on behalf of RJC, plus prejudgment interest, "to be distributed first to the payment of their attorneys' fee with the remaining amount distributed equally among the six shareholders." They also sought a postjudgment order requiring Shirley to turn over business records on a monthly basis. They noted that the circuit court had granted summary judgment as to the present action, allowing them to assert their additional concerns in a separate action, and contended that there was "no question that the Plaintiffs prevailed in this action—resulting in RJC recovering nearly $1.5 million dollars." They further contended that if Shirley "had not paid herself $1.405 million in management fees throughout 2019, that money would have been distributed to the shareholders as an extra dividend." While they agreed that Shirley complied with Wales's recommendation by transferring the money back to RJC, they complained that "[t]o this day, RJC still holds the nearly $1.5 million recovered as a result of this lawsuit[,]" and Shirley "has not issued any distribution of profits since the first quarter of 2020." For this reason, they claimed they are entitled to a prorata distribution of the recovery.

Additionally, the Crain Sisters requested an award of $126,593.62 in attorneys' fees and costs to be paid from the recovered funds under the "common fund" doctrine, relying on *Millsap v. Lane*, 288 Ark. 439, 706 S.W.2d 378 (1986), and *Hall v. Staha*, 314 Ark. 71, 858 S.W.2d 672 (1993). They claimed that "[t]he prosecution of this action benefited RJC

16

substantially in that it recovered nearly 1.5 million—all due to the efforts of the Plaintiffs[,]" and it would be "entirely improper for RJC to reap the benefits of the Plaintiffs' actions without reimbursing the Plaintiffs their out-of-pocket expenses."

On July 22, 2022, the circuit court entered an order of dismissal, ruling, in pertinent part, as follows:

> The Court grants Defendant Crain's Motion for Summary Judgment because the claims in Plaintiffs' Complaint are moot based on the investigation and recommendations of Jason Wales concerning those claims and the actions of the Board of Directors of RJC in receiving, approving, and carrying out the recommendations of Mr. Wales.

> Plaintiffs have sought to raise new claims, not contained in their Complaint, involving financial activities of RJC going back to 2017. Plaintiffs report that they have made demand on the Board of Directors by letter dated May 11, 2022, to investigate those new claims, and RJC reports that it is investigating them. Those new claims are not made in this lawsuit and are not ripe to include in this lawsuit because they remain subject to the Board of Directors' investigation. If Plaintiffs disagree with the Board's resolution of those claims, Plaintiffs could seek to file a new lawsuit, and RJC would have the right to seek dismissal on all available grounds.

> The Court had a concern that such new claims could be barred by limitations, but the Court believes that the claims asserted in the May 11, 2022 letter would relate back to this case.

> There are additional pending matters on the docket that the Court resolves in this Order.

> The Court, being well and sufficiently advised, after reviewing the pleadings filed herein and having heard arguments from the parties' respective counsel, finds as follows:

> 1. Defendant Crain's Motion for Summary Judgment should be and hereby is GRANTED. Defendant Crain's Motion for Protective Order and Motion to Terminate Derivative Action are denied as moot.

17

. . . .

7. On July 1, 2022, Plaintiffs filed a Motion to Distribute Recovered Funds and Injunctive relief. On July 11, 2022, RJC and Mrs. Crain both filed Responses. For good cause shown, Plaintiffs' motion is denied in part and granted in part. During a previous hearing in January 2022, the Court observed that whether to distribute corporate funds to shareholders, and if so, in what amount, is a corporate matter, not a matter for the Court to determine. Accordingly, Plaintiffs' Motion to Distribute is denied. Plaintiffs' request for injunctive relief is denied.

8. Plaintiffs are awarded $8,646.25 in attorneys' fees and $187.50 in filing fees against RJC as reasonable attorneys' fees up until the board acted in response to the Wales Report on August 2, 2021.

9. RJC is awarded interest against Mrs. Crain at the legal rate of 3.75% from December 18, 2020, the date the Complaint was filed until August 4, 2021, the date the funds were returned to RJC, totaling $32,467.62.

This resolves all pending matters.

The Crain Sisters filed a timely notice of appeal from the July 22, 2022 order, and Shirley and RJC filed timely notices of cross-appeal.

## II. *Standard of Review*

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated and when the case can be decided as a matter of law. Ark. R. Civ. P. 56(c)(2); *Smith v. St. Paul Fire & Marine Ins. Co.*, 76 Ark. App. 264, 268, 64 S.W.3d 764, 767–68 (2001). The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion. *City of Lowell v. City of Rogers*, 345 Ark. 33, 39, 43 S.W.3d 742, 745 (2001). A factual issue exists, even if the facts are not in dispute, if the facts "may result in differing conclusions as to whether the

18

moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). In such a case, summary judgment is inappropriate. *Id.,* 43 S.W.3d at 746. The object of summary-judgment proceedings is not to try the issues but to determine whether there are any issues to be tried; if there is any doubt whatsoever, the motion should be denied. *Akers v. Butler,* 2015 Ark. App. 650, at 4, 476 S.W.3d 183, 185.

The party moving for summary judgment bears the burden of showing that there is no issue of material fact. *Mack v. Sutter,* 366 Ark. 1, 5, 233 S.W.3d 140, 144 (2006). Once this showing is made by the moving party, the burden shifts to the nonmoving party to "move beyond formal allegations of pleadings and meet proof with proof by showing that a genuine issue of material fact remains to be litigated." *Id.* Evidence must be material and admissible to establish a genuine issue of material fact. *Fryer v. Touchstone Physical Therapy, Inc.,* 365 Ark. 295, 301–05, 229 S.W.3d 7, 12–14 (2006).

On review, this court determines if summary judgment was appropriate by deciding whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *City of Lowell,* 345 Ark. at 39, 43 S.W.3d at 746. Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* We view the evidence in a light a most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

III. *Discussion*

A.     Summary Judgment

19

The first question we must answer is whether the circuit court erred in granting summary judgment in favor of Shirley. As noted, the circuit court found that the Crain Sisters' derivative claims asserted in the complaint became moot based on "the investigation and recommendations of Jason Wales concerning those claims and the actions of the Board of Directors of RJC in receiving, approving, and carrying out the recommendations of Mr. Wales." The Crain Sisters contend that the circuit court erred in reaching this conclusion because Wales's investigation and the resulting board action did not address all the allegations made in the derivate complaint; consequently, genuine issues of material fact remain to be decided regarding Shirley's liability for corporate wrongdoing beyond her misappropriation of the roughly $1.5 million in management fees and personal travel expenses she ultimately refunded RJC following Wales's investigation and recommendation.

A case may become moot and therefore nonjusticiable at any stage of legal proceedings. *Hemp Health, LLC v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 193, at 4–5, 644 S.W.3d 829, 832. Generally, an issue is considered moot if any judgment or opinion issued by a court would have no practical effect upon a then existing legal controversy. *Id.* at 4, 644 S.W.3d at 832. A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal. *Id.* at 4–5, 644 S.W.3d at 832.

Shirley argues that this case is moot pursuant to Rule 23.1 because she called for an independent investigation and then accepted and complied with every recommendation made in Wales's report. She contends that in light of these facts, there are no other interests that the Crain Sisters can assert on behalf of RJC, and dismissal is appropriate. The Crain

20

Sisters argue that while RJC was authorized to commence an investigation of the charges made in the shareholder-derivative complaint and the circuit court had the discretion to stay the action until the investigation was complete pursuant to Arkansas Code Annotated section 4-27-740(b), neither this statute nor any other statute requires dismissal if a corporation accepts and complies with the findings in the investigation. The Crain Sisters contend that they are entitled to judicial review of the findings in Wales's report. We agree.

At a January 21, 2022 motions hearing, counsel for the Crain Sisters stated: "There is nothing in the statute that says that Mr. Wales assumed the role of the Judge, and put on the black robe, and his findings are final to all. There is nothing. . . . Mr. Wales is not the final decision maker. You are, Judge." At this same hearing, the circuit court stated, "I don't think [Wales's] investigation by itself is solely binding." At oral argument, counsel for Shirley agreed that the investigation was not binding on the circuit court and that the court did not adopt the findings of the report. Despite the consensus that Wales's investigation was not binding on the circuit court, the court failed to conduct any judicial review of the independence and reasonableness of the findings in the report or of the Crain Sisters' specific challenges to the findings in the report.

For example, the Crain Sisters alleged that "[i]n 2019, Shirley approved a payment to herself in the amount of $15,000 for what she described as a 'Director's Fee.'" Wales found that the payment of this $15,000 director's fee was reasonable and recommended that RJC take no action concerning this allegation. The Crain Sisters challenged Wales's finding as plainly "wrong," as demonstrated by corporate records showing that Shirley was not

21

appointed as director of RJC until 2020. Shirley, on the other hand, maintained that the Crain Sisters' production of a document from 2020 did not show that she was not a director in 2019. Her contention, however, was based solely on her own assertion that "Mr. Wales went through everything" without pointing to any record or document to support the assertion. This is a material fact in dispute.

The Crain Sisters also alleged in their complaint that in 2019, Shirley reduced the quarterly distributions of profits to them but kept the quarterly distributions at the same amount for herself and her son, Brian Pope, thereby jeopardizing RJC's IRS Subchapter S status. Wales's report found that in 2020, RJC equalized the total amount of distributions by giving more to the Crain Sisters. The Crain Sisters dispute this finding with evidence that Shirley received additional unreported compensation in 2018, 2019, and 2020, which was not addressed in the report. Furthermore, they argue that the report did not specify the exact monetary value of disproportionate distributions or the specific dates that the amounts were equalized. Although Wales's report stated, "RJC should take no action except to ensure that any future shareholder distributions comply with applicable corporate governance documents and IRS regulations and, if made, are in the best interests of RJC," the circuit court did not inquire of RJC what it had done to ensure this action.

In addition, the Crain Sisters alleged in their complaint that from 2014 to 2018, the total amount of RJC travel expenses equaled $62,085.00, yielding an annual average of $12,417. However, in 2019 alone, RJC reported travel expenses in the amount of $139,290.00. Although Wales's report noted that of the $139,290, $92,589.03 was for

22

Shirley's personal travel expenses and were reimbursed by Shirley, the Crain Sister disputed Wales's finding that the remaining $46,701 categorized as travel expenses were legitimate business expenses. There was no explanation in the report what the $46,701 was for and why it was a legitimate travel expense. The Crain Sisters disputed the $46,701, claiming that the amount included "landing fees" and that, while RJC did not own a plane subject to landing fees, Shirley did.

Because Wales's report is not binding on the circuit court, the parties have the right to dispute the findings in the report, the parties are entitled to judicial review of the findings in the report, and there are issues of material fact in dispute in this case, we hold that the circuit court erred in granting Shirley summary judgment and dismissing the derivative action. We reverse and remand the matter for further proceedings.

B.     Motion to Distribute the Recovered Funds

For their second point on appeal, the Crain Sisters allege that the circuit court erred in denying their motion to distribute the recovered funds. The circuit court held, "During a previous hearing in January 2022, the Court observed that whether to distribute corporate funds to shareholders, and if so, in what amount, is a corporate matter, not a matter for the Court to determine. Accordingly, Plaintiffs' Motion to Distribute is denied." The circuit court relied on the business-judgment rule as a basis for its ruling. The business-judgment rule flows from the thought that judges are not equipped as well as directors to make business decisions. But judges have the duty to correct wrongs, and judges have a special authority to

craft remedies to overcome board omissions and to create an environment where fairness can be demonstrated. *Hall*, 314 Ark. at 85–86, 858 S.W.2d at 679.

The Arkansas Supreme Court has stated that two elements must be satisfied in order for the business-judgment rule to be invoked. First, its protection can be claimed only by *disinterested directors* whose conduct otherwise meets the tests of business judgment. Second, to invoke the rule, directors have a duty to inform themselves of all material information reasonably available to them prior to making a business decision. Having become so informed, they must then act with requisite care in discharge of their duties. *Hall v. Staha*, 303 Ark. 673, 800 S.W.2d 396 (1990); *Long v. Lampton*, 324 Ark. 511, 522, 922 S.W.2d 692, 699 (1996).

Shirley Craine is RJC's sole director and only voting shareholder. The standard of conduct for corporate directors is set out in Arkansas Code Annotated section 4-27-830 (Repl. 1996), which provides in pertinent part:

(a) A director shall discharge his duties as a director, including his duties as a member of a committee:

(1) in good faith;

(2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) in a manner he reasonably believes to be in the best interest of the corporation.

A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. *Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761 (1996); Restatement (Second) of Torts § 874 (1979). In the

24

search for inherent fairness and good faith to a corporation and shareholders, conduct of directors must be subjected to "rigorous scrutiny" when conflicting self-interest is shown. *Hall*, 314 Ark. at 79, 858 S.W.2d at 676 (quoting *Pepper v. Litton*, 308 U.S. 295, 306 (1939)). The duty of good faith "requires honesty in fact" and the observance of reasonable commercial standards of fair dealing. Ark. Code Ann. § 4-1-201 (Repl. 2020). *Long v. Lampton*, 324 Ark. 511, 517–18, 922 S.W.2d 692, 696–97 (1996).

As previously stated, the circuit court found that "whether to distribute corporate funds to shareholders, and if so, in what amount, is a corporate matter, not a matter for the Court to determine." Although this is a correct statement of the business-judgment rule, the rule is not absolute. As set forth above, its protection can be claimed only by disinterested directors who act with requisite care in discharge of their duties. The basis of this shareholder-derivative action is that Shirley breached her fiduciary duty to RJC. And Wales's investigation found that her actions in paying herself management fees of $1.38 million and in paying Dude, Inc. (a company of which she is an officer), $25,000 did not satisfy Arkansas Code Annotated section 4-27-830 (Repl. 2016), which requires a director to discharge her duties in good faith. There was also evidence that Shirley approved distributions to herself and her son while withholding distributions to the Crane Sisters and that she charged RJC for her personal travel expenses in excess of $92,000. Despite this evidence, the circuit court did not rule on whether Shirley was a disinterested director. It instead mechanically applied the business-judgment rule without properly applying the law to the facts. Under these circumstances, we hold that the circuit court erred in applying the business-judgment rule.

We reverse the circuit court's denial of the motion to distribute the recovered funds and remand for further proceedings consistent with this opinion.

### C.     Attorneys' Fees

Within their argument that the circuit court erred in denying their motion to distribute the recovered funds, the Crain Sisters also argue that the circuit court abused its discretion in limiting their award of attorneys' fees to $8,646.25, which was the amount of fees they had incurred up to August 2, 2021, when Shirley made full repayment to RJC. They contend that because they were responsible for Shirley's having to repay RJC approximately $1.5 million, they are entitled to all of their attorneys' fees in this case—over $125,000—to be paid from the recovered funds under the common-fund doctrine.

RJC's cross-appeal involves this same issue. But it argues *any* award of attorneys' fees in this case is an abuse of discretion. Specifically, RJC contends that there is no statutory or legal basis for the award of attorneys' fees to the Crain Sisters and no applicable equitable exception.  RJC notes that Arkansas follows the "American Rule" that each litigant must pay its own attorneys' fees "except when expressly provided for by statute."  *Intents, Inc. v. Sw. Elec. Power Co.*, 2011 Ark. 32, at 14, 376 S.W.3d 435, 443. RJC argues that the only statute that could apply in this derivate action, Arkansas Code Annotated section 4-27-740(d), provides that "[o]n termination of the proceeding the court may require <u>the plaintiff</u> to pay any defendant's reasonable expenses (including counsel fees) incurred in defending the proceeding if it finds that the proceeding was commenced without reasonable cause." Accordingly, RJC contends that there is no statutory right for the Crain Sisters to recover

fees from the corporation. RJC further contends that there are no equitable exceptions applicable to this case.

In evaluating an attorneys'-fee award, this court recognizes the superior perspective of the circuit court. *DWB, LLC v. D&B Pure Tr.*, 2018 Ark. App. 283, at 13, 550 S.W.3d 420, 429. Accordingly, the decision to award fees and the amount to award are discretionary determinations that the court will reverse only on a demonstration of an abuse of discretion. *Id.*, 550 S.W.3d at 429–30.

The "American Rule" generally prohibits a successful litigant from collecting attorneys' fees against the losing party, absent a state statute to the contrary. *Millsap*, 288 Ark. at 442, 706 S.W.2d at 379. Our supreme court has recognized two exceptions to the American rule: (1) the "common fund" doctrine and (2) the "substantial benefit" rule. *Gibson v. Buonauito*, 2022 Ark. 206, at 12, 655 S.W.3d 59, 67. The common-fund exception comes into play when a plaintiff has created or augmented a common fund, or assets have been salvaged for the benefit of others as well as himself. *Id.* at 13, 655 S.W.3d at 67. In such a situation, to allow others to obtain the full benefit from the plaintiff's efforts without requiring contribution or charging the common fund for attorneys' fees would be to enrich the others unjustly at the expense of the plaintiff. *Id.* A common fund contemplates a new pool of money. *Id.*

The supreme court first acknowledged the substantial-benefit rule in *Millsap*, a shareholder-derivative action. *Id.* In *Millsap*, the court stated that a shareholder could recover attorneys' fees against a corporation "if the corporation received 'substantial benefits'

27

from the litigation even [when] the benefits were not pecuniary and no fund was created." *Id.* (quoting *Millsap*, 288 Ark. at 442, 706 S.W.2d at 380). The supreme court later extended the exception to cover attorneys' fees against the State of Arkansas in *Lake View School District No. 25 of Phillips County v. Huckabee*, 340 Ark. 481, 495, 10 S.W.3d 892, 900–01 (2000), and later again in *Wilson v. Walther*, 2019 Ark. 105, 571 S.W.3d 897. *Id.* at 14–15, 655 S.W.3d at 68.

In *Millsap*, the court affirmed an award of attorneys' fees when the plaintiff's derivative action preserved "$400,000 plus interest in corporate assets," which benefited the corporation. 288 Ark. at 443, 706 S.W.2d at 380. The instant case is like *Millsap*. Courts in other jurisdictions, moreover, have affirmed attorneys'-fees awards in shareholder-derivative actions even when, like in this case, the derivative claims ultimately were mooted by a corporation's action in response to the derivative claims. *See O'Neill v. Church's Fried Chicken, Inc.*, 910 F.2d 263, 265–66 (5th Cir. 1990) (increased price per share in a tender offer benefited corporation and mooted the derivative suit but fee award to derivative plaintiff was appropriate); *see also Prudential-Bache Secs., Inc. v. Matthews*, 627 F. Supp. 622, 625–26 (S.D. Tex. Jan. 29, 1986) (fees award appropriate to shareholders who brought derivative action that was mooted by corporation's actions absent showing no causal connection between the institution of litigation and the benefits subsequently conferred on corporation and shareholders, even though award was not expressly authorized under state's corporate code). In light of this authority and the circumstances of this case, we hold that the circuit court did not abuse its discretion in awarding the Crain Sisters attorneys' fees of $8,646.25

28

and affirm this point on cross-appeal. However, because we reverse and remand the grant of summary judgment and the denial of the distribution of the recovered funds, the Crain Sisters' argument that they are entitled to attorneys' fees in excess of $8,646.25 is premature since the amount may change with a final ruling on the merits.

D.    Interest

Shirley's final argument on cross-appeal is that the circuit court's award of "pre-judgment interest" was improper because there is no underlying judgment related to the return of funds to RJC. She notes that there is no judgment awarding damages to RJC in this case. Instead, she contends that judgment was entered in her favor. She further argues that the statute requires that the rate of interest be calculated as of the "date on which the judgment was entered." Ark. Code Annotated § 16-65-114(a)(1)(B) (Supp. 2023). But, she claims instead of awarding interest on a judgment as the statute requires, the circuit court tied the award of interest and the rate of 3.75 percent to the date the complaint was filed until August 2, 2021, the date the funds were returned to RJC.

"[T]he controlling factor for pre-judgment interest is not whether the plaintiff recovers a particular amount. If a sum certain is sought and a lesser amount awarded, pre-judgment interest is still appropriate." *Aceva Techs., LLC v. Tyson Foods, Inc.*, 2013 Ark. App. 495, at 14–15, 429 S.W.3d 355, 365 (quoting Howard W. Brill, *Arkansas Law of Damages* § 10:3, at 142 (5th ed. 2004). It is proper to award prejudgment interest when "there is a method to determine the value of the property at the time of the injury." *DWB*, 2018 Ark. App. 283, at 15, 550 S.W.3d at 430. The circuit court must be able to ascertain the amount

value "by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion." *Id.* "If damages are not by their nature capable of exact determination, both in time and amount, prejudgment interest is not an item of recovery." *Id.* at 15, 550 S.W.3d at 430–31.

Here, the value of the property at the time of injury was reflected in the financial records from the transactions through which Shirley caused RJC to pay the improper management fees to herself and to Dude, Inc., in 2019. This amount is subject to mathematical computation without reliance on opinion and is capable of an exact determination. The circuit court's interest award was proper as compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. Therefore, we affirm this point on cross-appeal.

IV. *Conclusion*

On direct appeal, we reverse the summary-judgment dismissal of the derivative action and the denial of the motion to distribute the recovered funds, and we remand the matter to the circuit court for further proceedings consistent with this opinion. In light of these holdings, the Crain Sisters' request for attorneys' fees in excess of $8,646.25 is premature. On cross-appeal, we affirm the awards of $8,646.25 in attorneys' fees and interest to the Crain Sisters.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

KLAPPENBACH, C.J., and WOOD, J., agree.

*RMP, LLP*, by: *Timothy C. Hutchinson* and *Lisa M. Geary*, for appellants/cross-appellees.

30

*Kutak Rock LLP*, by: *Jess Askew III*, *McKenzie L. Raub*, *Niki Chung*, and *Jeff Fletcher*, for separate appellee/cross-appellant Shirley Crain.

*Taylor Law Partners LLP*, by: *Andrew J. Myers* and *Rick Woods*, for separate appellee/cross-appellant Regional Jet Center, Inc.