Wayne BUCK *v.* C.W. GILLHAM

CA 02-310                                              96 S.W.3d 750

Court of Appeals of Arkansas
Division II
Opinion delivered January 29, 2003

*Jana Vaughn* and *Benny M. Tucker*, for appellant.

*Hobbs, Garnett, & Naramore, P.A.*, by: *Ronald G. Naramore*, for appellee.

OLLY NEAL, Judge. This is the second appeal in this case. The Garland County Circuit Court originally awarded appellee, C.W. Gillham, $1,500 in his suit against appellant, Wayne Buck, for conversion. In an unpublished opinion dated September 19, 2001, *Buck v. Gillham*, CA 00-1236, this court dismissed the appeal for lack of finality as the trial court had not ruled upon a third-party complaint filed by the appellant. The third-party complaint was nonsuited; thus, we now reach the merits of the appeal. Appellant argues that the trial court erred in finding him liable because the elements of conversion were not met in this case. We agree; therefore, we reverse.

The facts are as follows. Appellant owns a used car dealership in Glenwood, Arkansas. One week prior to the events that gave rise to this case, appellant sold a car to Charles Hunsucker. On

July 5, 1997, Hunsucker returned to appellant's car lot at around 5:30 p.m. and indicated that he wanted to purchase a 1992 Ford Ranger that day because he was moving. He represented to appellant that he had been approved for a loan by a local bank. They agreed that Hunsucker would buy the vehicle for $7,500 and would receive $1,500 trade-in value for the vehicle he had purchased from appellant one week earlier. Hunsucker would then pay the remaining $6,000.

Because it was a holiday weekend, appellant was in a rush to leave. He did not require Hunsucker to complete all of the paperwork or pay the remaining $6,000. Instead, they agreed that Hunsucker would receive the truck that evening and that appellant would keep the title until Hunsucker paid the balance due. Hunsucker was to go to the bank no later than the following Tuesday and return with the payment.

Appellant completed and signed a warranty form, an invoice, a transfer of title, and an odometer disclosure statement. He completed these forms so that Hunsucker would be liable if he wrecked the vehicle before he paid the balance due on the vehicle. The invoice set forth the terms of the sale and had the words, "paid in full" written on it. When appellant went to retrieve the VIN number from Hunsucker's trade-in vehicle, Hunsucker, without appellant's knowledge, rummaged through appellant's desk and pilfered the title to the truck. Upon his return, appellant gave Hunsucker the completed paperwork and Hunsucker left with the truck.

When Hunsucker failed to return and pay the unpaid balance, appellant reported the vehicle stolen. Shortly thereafter, the vehicle was located when another car dealer informed appellant that appellee, C.W. Gillham, a used car dealer in Hot Springs, had the truck. During his testimony, Gillham indicated that he did not intend to sell the truck and that he had purchased it for his son. He stated that he had purchased the truck from Hunsucker on July 8, 1997, for $1,500 and acknowledged that he was advised that he would have to either use his dealer tags or have either appellant or Hunsucker license the truck.

When appellant went to retrieve his truck, he explained to appellee that the truck had been stolen, but appellee claimed that he had the title and refused to return the truck. Prior to helping appellant retrieve the truck, the Garland County Sheriff's Office consulted with a Garland County prosecuting attorney. The prosecutor informed the sheriff's department that appellee should either return the truck to appellant or face prosecution for receiving stolen property. Appellee subsequently returned the truck, and appellant paid him for the value of work he performed on the vehicle's brakes and tires.

Appellant ultimately sold the truck for $7,000.[1] Appellee brought suit against appellant for the tort of conversion, requesting $1,500. Appellant then filed a third-party complaint that has been nonsuited against Hunsucker for indemnification. The case was tried to the trial court without a jury. The court found appellant liable and rendered judgment against him for $1,500, stating in its letter opinion the following:

After considering the testimony and exhibits filed herein, I find in favor of the Plaintiff and award damages in the sum of $1,500.00. This decision is based on the facts that the defendant is responsible for giving Mr. Hunsucker most of the documentation necessary to demonstrate ownership of the vehicle in an effort to avoid any civil liability after he had delivered possession to Hunsucker, that he was responsible, at least in part, for allowing Hunsucker to steal the remaining documentation and also because he has received a $1,500.00 windfall.

This appeal followed.

When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is not whether there is substantial evidence to support the factual findings of the court, but whether the findings are clearly erroneous, or clearly against the preponderance of the evidence. *Springdale Winnelson Co. v. Rakes*, 337 Ark. 154, 987 S.W.2d 690 (1999).

---

[1] Hunsucker eventually pled guilty to theft, but appellant never received restitution from him, although he retained Hunsucker's trade-in vehicle.

■ ■ The general rule, as regards all personal property except money and negotiable paper, is that in the absence of limitations and estoppel, a purchaser from a thief acquires. no title against the true owner. *Eureka Springs Sales Co. v. Ward*, 226 Ark. 424, 290 S.W.2d 434 (1956); *see Midway Auto Sales v. Clarkson*, 71 Ark. App. 316, 29 S.W.3d 788 (2000). A person can be held liable to the true owner of stolen personal property for conversion notwithstanding that he or she acted in the utmost good faith and without knowledge of the true owner's title. *See Eureka Springs Sales Co. v. Ward, supra.*

■ Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights. *Dillard v. Wade*, 74 Ark. App. 38, 45 S.W.2d 848 (2001). The property interest may be shown by a possession or a present right to possession when the defendant cannot show a better right, since possession carries with it a presumption of ownership. *Big A Warehouse Dist. v. Rye Auto Supply*, 19 Ark. App. 286, 719 S.W.2d 716 (1986). The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 971 S.W.2d 788 (1998); *Tackett v. McDonald's Corp.*, 68 Ark. App. 41, 3 S.W.3d 340 (1999). The conversion need not be a manual taking or for the defendant's use. *Big A Warehouse Dist. v. Rye Auto Supply, supra.*

■ Ordinarily, the proper measure of damages for conversion of property is the market value of the property at the time and place of its conversion. *McQuillan v. Mercedes-Benz Credit Corp., supra.*[2] Fair market value is defined as the price the personalty would bring between a willing seller and a willing buyer in the open market after negotiations. *JAG Consulting v. Eubanks*, 77

---

[2] However, the circumstances of a case may sometimes require a different standard, including a measure of the expenses incurred as a result of the conversion. *McQuillan v. Mercedes-Benz Credit Corp., supra.*

Ark. 232, 72 S.W.3d 549 (2002). Evidence based upon purchase, replacement, or rental prices is improper. *Id.*

We conclude that this record does not support a finding that Gillham proved all the elements of conversion. At trial, Gillham testified as follows:

> As to whether at that point I had any suspicions about whether or not it was good title or the vehicle was [Hunsucker's] property, I asked him for the title, and I had seen his name on it with no lien on it. I am sure that was all right. As far as I was concerned, there was no lien on it. So whatever, he asked, that was what I ·was willing to pay for it.
>
> I did have some concerns in a way. I had enough concerns to go see Lloyd's used car lot to ask him for his advice, but not for the price. I went to Lloyd's because I wasn't used to the TIMA forms. There were three TIMA forms, transferring from each dealer to another dealer before it was sold. I wanted to be sure they were correct.
>
> Mr. Lloyd did [ask] me was I trying to steal it. I told him [Hunsucker] made the price. Mr. Lloyd told me that if I didn't want it, he would buy it. I did not give him a price or what the man quoted me.
>
> I was concerned that the price was very low. It is true that Mr. Lloyd advised me that I wouldn't be able to license this vehicle without consulting Mr. Buck. He told me that I would have to get Mr. Buck or have Mr. Hunsucker to license the vehicle, or use my dealer tags to drive it.

This information indicates that appellee had notice of the apparent defects in the title. It also indicates that appellee should have become suspicious when review of the title and TIMA forms indicated that Hunsucker had just purchased the vehicle three days prior for $7,500, and that he should have become even more suspicious when he learned that he could not license the truck absent assistance from appellant or Hunsucker. Although appellee testified that "when [Hunsucker] gave me a price, of course I knew it was below [value]," he notably did not ask for the fair market value of the truck in his complaint, but asked only for his $1,500 purchase price.

██ ██ *Black's Law Dictionary* defines "possessory interest" as "the present right to control property, including the right to exclude others, by a person who is not necessarily the owner." *Black's Law Dictionary* 1185 (7th ed. 1999). Although undoubtedly negligent in his actions, appellant held the present right to control the property. Hunsucker acquired title to the vehicle by theft and had not paid the full purchase price for the truck when he took possession. Thus, in theory, appellant continued to have a possessory interest in the truck — in essence, a lien — and that interest was superior to any interest appellee had acquired. *See Phelan v. Dalson*, 14 Ark. 79 (1853) (it is clear that where property has been obtained from the owner by a felonious act, his unqualified ownership is not in the least changed, and he may peaceably take it, in whose hands soever he may find it.); *see also Russell v. Brooks*, 92 Ark. 509, 122 S.W. 649 (1909) (where personal property is procured from the owner by a felonious act, or by a fraudulent pretense, his unqualified ownership is not changed, and he may recover it without tendering the consideration received by him). As a result, we conclude that the appellant had a superior right to possess the truck and is not liable to appellee for conversion; therefore, we reverse the trial court's ruling as it was clearly erroneous.

We note that from the reading of the letter opinion, the court's decision appears not to be based on the theory of conversion, but on what it believed to be equitable. As this was a tort action, it was commenced in circuit court. The circuit court could not award appellee damages based on the theory of equity.

Reversed.

GLADWIN and ROAF, JJ., agree.