--------
LARRY D. VAUGHT, Judge *424 This appeal involves a business dispute arising out of the sale of Mayflower RV. Appellants DWB, LLC (DWB), and Danny Brown appeal from a judgment in favor of appellees D & T Pure Trust (D & T) and Toni Boydston, individually and as personal representative of her deceased husband Doug Boydston's estate. We affirm in part and reverse in part.
A critical component of this case is the insurance coverage required by the parties' lease, which required Brown and DWB to maintain insurance coverage in the amount of the replacement value of any improvements erected on the property. Replacement-value insurance covers the cost of replacing a structure, whereas actual-cash-value insurance takes depreciation into consideration and essentially covers only market value of the structure.
In April 2014, a tornado struck the Mayflower property, causing substantial damage. This triggered a dispute between the parties, and Brown and DWB sued Doug Boydston and D & T to seek a declaratory judgment on the parties' rights and responsibilities on several issues. D & T and Doug Boydston responded to DWB and Brown's complaint and counterclaimed. For appellate purposes, the claims presented to the court that are most pertinent are D & T and Doug Boydston's breach-of-contract claim for underinsurance of the Mayflower property and their two claims for conversion of certain insurance proceeds.
Shortly after the declaratory-judgment action was filed, the insurance company tendered a $450,000 check representing full policy limits to DWB for tornado damage incurred on the Mayflower property. Brown endorsed the check and tendered it to D & T and Doug Boydston with an accord-and-satisfaction letter providing that he considered the check to be payment in full for any damage that occurred from the tornado. D & T and Doug Boydston refused to accept the $450,000 as accord and satisfaction of their claims against DWB and Brown. Thereafter, they filed a motion to disburse the $450,000 free and clear of any accord-and-satisfaction claim or, alternatively, for this money to be *425 placed into the circuit court's registry pending further orders of the court.
The insurance company also tendered a $10,000 check to DWB for cleanup of debris stemming from the tornado. DWB and Brown were not specifically required to maintain insurance for debris cleanup, but the lease did require them to maintain "fire, hazard and extended coverage insurance" on the improvements to the property. The evidence demonstrates that Brown and DWB never offered the $10,000 insurance proceeds to Doug Boydston and D & T. Brown and DWB argued that because the debris-removal policy was not required under the lease, Doug Boydston and D & T were not entitled to the money.
In September 2014, the circuit court held a hearing on the motion to disburse the $450,000 or, alternatively, for the money to be placed into the registry. At the conclusion of the hearing, the circuit court gave D & T and Doug Boydston three options, they could (1) return the check to Brown and DWB, (2) accept the check as an accord and satisfaction, or (3) ask that the funds be deposited into the court's registry. They chose to have the money deposited into the registry of the court, and an order was entered authorizing the deposit. Even though no evidence was received at the hearing, the order included a finding that Brown and DWB had tendered the check to D & T and Doug Boydston in good faith-a requirement for accord and satisfaction.
Later in September 2014, Doug Boydston died while cleaning debris at the Mayflower property. Toni Boydston, his widow and personal representative, was substituted for him as a party in this case; she also intervened in her individual capacity.
In November 2014, First Service Bank (FSB), the mortgagee on the Mayflower property, filed a motion to intervene, which the circuit court granted. FSB sought to withdraw from the registry of the court the amount it was owed under the mortgage. FSB ultimately prevailed and was allowed to withdraw approximately $185,000 from the registry of the court to satisfy its mortgage.
A four-day trial on the merits was held in February 2016. In July 2016, the circuit court entered detailed findings of fact and conclusions of law and a judgment. The findings most pertinent to this appeal are that appellants Brown and DWB underinsured the Mayflower property; converted the $450,000 and $10,000 insurance checks and were liable for $230,000 in punitive damages for conversion; and were required to pay prejudgment interest for the claims arising out of the converted checks and the underinsured property. The order also allowed appellees D & T and Toni Boydston, individually and as personal representative of Doug Boydston's estate, to submit a request for attorney's fees, and in November 2016, the circuit court entered an order awarding appellees $200,000 in attorney's fees.[1] This timely appeal followed.
Appellants make six arguments in support of reversal. They contend that (1) appellees waived their right to enforce against any alleged underinsurance of the Mayflower property; (2) they did not commit conversion of the $450,000 and $10,000 insurance checks; (3) assuming they committed conversion, punitive damages were not appropriate; (4) the attorney's-fee award should be reversed or reduced; (5) the award of prejudgment interest for conversion of the $450,000 and for the underinsurance *426 of the property is reversible error; and (6) it was error to hold Danny Brown personally liable for the acts of DWB.
I. Waiver
The parties' lease required appellants to maintain insurance coverage in the amount of the replacement value of any improvements erected on the property. The evidence demonstrated that appellants had the property insured with actual-cash-value insurance rather than replacement-value insurance and had $450,000 worth of coverage, which appellees contend was significantly less than was necessary to cover the replacement of any improvements on the property.
Appellants clearly breached the lease, but they argued that appellees waived the right to enforce against any breach because appellees knew and accepted that there was $450,000 of actual-cash-value insurance on the property. "A party to a contract, who, with knowledge of a breach by the other party, continues to accept benefits under the contract and suffers the other party to continue in performance thereof, waives the right to insist on the breach." Stephens v. W. Pontiac-GMC, Inc. , 7 Ark. App. 275, 278, 647 S.W.2d 492, 493 (1983).
In determining that appellants breached the lease, the circuit court found that appellees had not waived their right to enforce the lease. Specifically, the circuit court stated that "there was no admissible or credible testimony that Doug Boydston requested or agreed to" the $450,000 value and that he "would have never knowingly and willingly agreed to the lower insurance amounts."
Deciding whether there has been a waiver is a fact-intensive inquiry. On appeal, we evaluate the circuit court's findings for whether they were clearly erroneous or clearly against the preponderance of the evidence. Omni Holding & Dev. Corp. v. C.A.G. Invs., Inc. , 370 Ark. 220, 258 S.W.3d 374 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. Id. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. Ford Motor Credit Co. v. Ellison , 334 Ark. 357, 974 S.W.2d 464 (1998).
In support of waiver, appellants rely on a June 2013 email from Brown to Doug Boydston that included a certificate of insurance setting policy limits at $450,000 for the Mayflower property. At trial, appellants asserted that there were no further communications between the parties until after the tornado and contended that Doug Boydston's silence operated as his acceptance of the terms of the policy and a waiver of any alleged breach. The circuit court specifically found otherwise, determining that Boydston would have never accepted the terms of the insurance procured. Additionally, evidence in favor of waiver comes from the testimony of Brown's insurance agent, Dale Dixon-who the circuit court repeatedly found to lack credibility. Dixon testified that Doug Boydston set the $450,000 value on the Mayflower property.
Based on the evidence, we cannot conclude that the circuit court's findings were clearly erroneous, because there is no credible evidence that appellees knowingly and voluntarily waived the right to enforce the lease. The circuit court unequivocally rejected the testimony of Dixon based on his lack of credibility, and credibility determinations are within the province of the fact-finder. Id. Furthermore, the email is not proof, in and of itself, that Boydston *427 knowingly and voluntarily accepted the insurance coverage provided. The only proof comes from the uncredible testimony of Dixon. By contrast, the circuit court received evidence regarding the amount and type of insurance Doug Boydston had previously carried on the property, which demonstrated that he historically insured the property for significantly more than $450,000 and supported the finding that he would not have accepted coverage in this amount. We affirm the circuit court's finding that appellees did not waive their right to enforce the lease.
II. Conversion
The circuit court found appellants liable for conversion of two insurance checks-one for $450,000 and another for $10,000-and appellants seek reversal of both findings. Conversion is the wrongful possession or disposition of another's property. Buck v. Gillham , 80 Ark. App. 375, 96 S.W.3d 750 (2003). This tort is committed when one wrongfully commits a distinct act of dominion over another's property that is inconsistent with the owner's rights. Id. The property interest may be shown by a possession or a present right to possession when the defendant cannot show a better right, since possession carries with it a presumption of ownership. Id. The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is inconsistent with the plaintiff's rights. Id.
First, appellants argue that they could not have committed conversion because, on *428 receipt, Brown endorsed the check and sent it to appellees with an accord-and-satisfaction letter, to which appellees refused to agree. Appellants argue that these acts do not demonstrate an intent to control the money. We disagree. The intent required to commit conversion is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is inconsistent with the plaintiff's rights. Id. The circuit court found that appellants exercised dominion and control over money to which they were not entitled, and these findings are supported by the evidence.
Second, appellants argue that they could not have converted the money once it was placed into the registry of the court. Appellants emphasize that it was appellees who requested that the money be placed into the court's registry. Appellants also cite caselaw that a circuit court has exclusive jurisdiction to order a distribution of funds from the registry. See Sturdivant v. Reese , 86 Ark. 452, 111 S.W. 261 (1908). We do not find appellants' argument persuasive. Although it is correct that only a court order will authorize the release of money from the registry, this is not dispositive of the issue. The money belonged to appellees, and throughout the litigation, appellants exercised control over the money by placing conditions on its release.
For the foregoing reasons, we affirm the circuit court's finding of conversion of the $450,000.
Appellants also challenge the finding that they converted a $10,000 insurance check, which was issued pursuant to a debris-removal policy. The $10,000 debris-removal policy covered improvements owned by D & T as well as DWB and Brown's business personal property. We acknowledge that the lease required appellants to maintain "fire, hazard and extended coverage insurance" on the property, but it did not specifically require appellants to obtain a debris-removal policy.
The circuit court found appellees had an interest in the debris-removal policy based on the testimony of Dale Dixon, who stated that since Doug Boydston was supposed to be a certificate holder, he would have a claim to this debris removal. The circuit court further found that despite appellees' interest in the money, appellants never told appellees about the policy or offered it to appellees. Based on the evidence, we hold that it was not clearly erroneous to find that appellees had an interest in the money. More importantly, the undisputed evidence indicates that appellees did not receive the money because appellants exercised dominion and control over it-in this instance, the money was never even offered to appellees. We affirm the finding that appellants converted the $10,000 check.
III. Punitive Damages
Based on the conversion of the $450,000 and $10,000 in insurance proceeds, the circuit court awarded $230,000 in punitive damages to appellees. Appellants seek reversal of the award. Arkansas caselaw supports the award of punitive damages in certain conversion actions. To prevail on a claim for punitive damages for conversion, "the plaintiff must show that the defendant intentionally exercised control or dominion over the plaintiff's property for the purpose of violating his right to the property or for the purpose of causing damages." City Nat'l Bank of Fort Smith v. Goodwin , 301 Ark. 182, 188, 783 S.W.2d 335, 338 (1990). Our court reviews the circuit court's order for punitive damages for whether it is clearly erroneous. Entertainer, Inc. v. Duffy , 2012 Ark. 202, 407 S.W.3d 514.
With respect to the $450,000, appellants contend that they could not have had the purpose of causing damage because they were relying on a valid court order. The circuit court's order in which it authorized the $450,000 deposit into the registry included a finding that appellants tendered the check to appellees in good faith.
The finding of good faith was made in a nonfinal order, and as a rule, a circuit court may modify a nonfinal order. See Looney v. Looney , 336 Ark. 542, 986 S.W.2d 858 (1999). Irrespective of this, appellants contend that they had a right to rely on the finding, even if it was erroneous. See King v. Carney , 341 Ark. 955, 20 S.W.3d 341 (2000) ; Cole v. First Nat'l Bank of Fort Smith , 304 Ark. 26, 800 S.W.2d 412 (1990). The cases cited by appellant are inapposite. King involves an order to extend time for service that was later revoked. The supreme court held that service was proper because service was effectuated before the order to extend time for service was revoked. In Cole , an order for default judgment was appealed. The supreme court set aside the order for default based on insufficient service, but the statute of limitations had expired. The supreme court held that the savings statute applied because the parties had relied on the order for default. The cases cited involve reliance on the directives of orders rather than a singular finding made in an order. This difference is significant. Furthermore, the circuit court entered the order to deposit the money in the court's registry without receiving any evidence regarding motives or state of mind in tendering the check. For these reasons, we affirm the award of punitive damages for the conversion of the $450,000.
IV. Attorney's Fees
Following the entry of the judgment, appellees sought $201,884.06 in attorney's fees based on Arkansas Code Annotated section 16-22-308 and their contracts with appellants; the circuit court awarded $200,000. Appellants' argument for reversal of the fee award is twofold. First, appellants argue that attorney's fees were improperly awarded because this was primarily a tort case. Alternatively, appellants argue the award should be reduced because appellees should not be permitted to receive fees for time spent pursuing tort claims.
In evaluating an attorney's-fee award, we recognize the superior perspective of the circuit court. Chrisco v. Sun Indus., Inc. , 304 Ark. 227, 800 S.W.2d 717 (1990). Accordingly, the decision to award *430 fees and the amount to award are discretionary determinations that our court will reverse only if the appellants can demonstrate an abuse of discretion. Id.
First, we consider whether the award of attorney's fees was proper. Arkansas Code Annotated section 16-22-308 provides for the award of fees to the prevailing party in contract actions. In instances in which both contract and tort claims are pursued, our courts have held that fees are proper under Arkansas Code Annotated section 16-22-308 only when the action is based primarily in contract. Jiles v. Union Planters Bank , 90 Ark. App. 245, 205 S.W.3d 187 (2005).
It is clear appellees were the prevailing parties in this action, but appellants contend that reversal is proper because the action was based primarily in tort rather than contract. Their argument is premised on the fact that the circuit court awarded more damages for the tort claims-$544,546.29-than it did for the breach-of-contract claims-$194,779.11. Although we agree that substantially more money was awarded for the tort claims than for the breach-of-contract claims, this fact is not dispositive of whether the action was based primarily in tort or in contract.
Contrary to appellants' claim, we do not agree that the bulk of the litigation was based on tort claims. Notably, breach-of-contract claims accounted for six of the eight causes of action in which damages were awarded to appellees. Additionally, several of appellants' requests for declaratory relief were based in contract. It was not error to decide that this action was based primarily in contract and to award fees based on Arkansas Code Annotated section 16-22-308.
Having reached this conclusion, we direct our attention to appellants' argument that the fee award should be reduced because some of the fees incurred were related to tort claims. Appellants' argument in favor of reversal focuses on testimony from appellees' counsel that "maybe 10 percent" of the time was spent on the tort claim and later stated that this 10 percent was an "arbitrary estimate."
We are not persuaded that there has been an abuse of discretion. The circuit court heard extensive testimony relating to the Chrisco factors, and the fee award provides that the court considered these factors when making its award. The circuit court was in a superior position to evaluate the reasonableness of a fee for prevailing in this litigation, and we affirm the fee award.
Appellants challenge the circuit court's award of prejudgment interest on two claims: the breach-of-contract claim for failure to maintain adequate insurance and the claim for conversion of the $450,000.
Prejudgment interest is intended to be compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. Dorsett v. Buffington , 2013 Ark. 345, 429 S.W.3d 225. The test for whether an award of prejudgment interest is proper is whether there is a method to determine the value of the property at the time of the injury. Lovell v. Marianna Fed. Sav. & Loan Ass'n , 267 Ark. 164, 589 S.W.2d 577 (1979). Prejudgment interest "is only allowable if the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion." See Howard W. Brill, Arkansas Law of Damages § 10:3, at 175 (6th ed. 2014). If damages are not by their nature capable of exact determination, both in time and amount, prejudgment interest is not an *431 item of recovery. Lovell, supra. The award of prejudgment interest is a question of law to be decided by the court on a de novo review. Spann, supra.
As a preliminary matter, appellees argue that the issue is not preserved for our review. We disagree. Appellants first challenged the award of prejudgment interest in a posttrial motion for reconsideration or clarification. Often, arguments made for the first time in posttrial proceedings are not preserved for appellate review. See Lee v. Daniel , 350 Ark. 466, 91 S.W.3d 464 (2002). We acknowledge, however, that prejudgment interest does not need to be specifically sought in pleadings. See Brill, supra at 180 (citing Eckles v. Perry-Austen Bowling Prods., Inc. , 275 Ark. 235, 628 S.W.2d 869 (1982) ). Here, appellees did not specifically plead for prejudgment interest, and it would be illogical to require appellants to defend against the imposition of prejudgment interest before the issue was raised. Appellants challenged the award of prejudgment interest in their motion for reconsideration or clarification, which was their earliest opportunity.
A. Failure to Maintain Adequate Insurance
The circuit court awarded appellees $154,523.51 in damages for appellants' failure to maintain adequate insurance on the Mayflower property, representing the difference between the amount of insurance on the property and the circuit court's determination of the property's replacement cost. The circuit court awarded prejudgment interest on this amount from September 26, 2014-the date the check was ordered to be deposited into the registry of the court-until July 14, 2016-the date the judgment was entered.
The question for our court is whether there is a method for determining the exact value of the property at the time of the injury without reliance on opinion or discretion. Lovell, supra. We acknowledge that the parties presented competing evidence regarding the estimated cost to replace the building, and the circuit court exercised its discretion in determining the proper measure of damages. Because it was impossible to compute the amount of damages without reliance on opinion or discretion, we reverse the award of prejudgment interest for the underinsurance claim.
The circuit court also awarded appellees $9,567.58 in damages for conversion of the $450,000 check, representing actual interest payments appellees made toward the mortgage with FSB. The prejudgment interest was awarded from February 17, 2016-the date FSB's funds were released from the court's registry-to July 14, 2016-the date of the judgment.
Here, the amount of interest appellees paid to FSB is capable of an exact, mathematical calculation; however, appellants seek reversal on the theory that the exact time of the loss cannot be determined. Appellants emphasize that several different dates-for instance, the date the tornado hit, the date DWB received the insurance check, and the date the check was deposited into the court's registry-could have been chosen by the circuit court. We agree. The circuit court's exercise of discretion in setting the date of the conversion demonstrates that the court could not determine an exact award, and we reverse this award of prejudgment interest as well.
For their final argument on appeal, appellants contend that the circuit *432 court erred by finding Brown and DWB jointly and severally liable for conversion; they argue it was error to find Brown personally liable. Specifically, appellants cite Arkansas Code Annotated section 4-32-304, which provides that "a person who is a member, manager, agent, or employee of a limited liability company is not liable for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise."
Appellants are precluded from making this argument on appeal. A party litigant is bound by his or her pleadings and the allegations therein and cannot maintain a position inconsistent therewith. Int'l Harvester Co. v. Burks Motors, Inc. , 252 Ark. 816, 481 S.W.2d 351 (1972). Moreover, a litigant is not permitted to assume wholly inconsistent positions on the same issue in the same case. Id.
In appellants' response to the motion to disburse funds, they admit appellees' allegation that "although [appellants] assert no claims to the proceeds" of the $450,000 check, "[appellants] contend that the deposit of the check will constitute an accord and satisfaction." Appellants are bound by their pleadings, and because they admitted that both DWB and Brown were placing conditions on the release of the money, they may both be held liable for conversion.
Despite this ruling, the relevant question is whether there is evidence that Brown exercised control over the insurance proceeds in his individual capacity. There is ample evidence that Brown placed conditions on the acceptance of the insurance proceeds. Appellants argue that any control exercised by Brown was in his capacity as a member of DWB. They stress that the check was payable to DWB and that Brown endorsed the check in his capacity as a member of DWB. Conversely, evidence demonstrates that Brown was personally obligated to maintain insurance on the property under the lease. This supports a finding that Brown exercised dominion and control over the insurance checks in both his personal and business capacities. Because the circuit court did not clearly err in finding Brown personally liable, we affirm.
Affirmed in part; reversed in part.
Hereafter, unless necessary for context and understanding, we will refer to the parties as appellants and appellees.