Cite as 2026 Ark. App. 356

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
No. CV-25-64

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** May 27, 2026 |
| BRIDGET REESNES | APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73DR-09-437] |
| V. | | |
| PAUL REESNES | APPELLEE | HONORABLE DANIEL C. BROCK, JUDGE |
| | | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

This is the third appeal in this domestic-relations case, and the issues on appeal pertain to the division of CAC Properties, LLC (CAC Properties), which is a marital asset that appellee Paul Reesnes omitted in the parties' property settlement agreement (PSA) and was not divided upon their divorce in 2009. Ten years after the divorce decree was entered, appellant Bridget Reesnes filed a motion to modify the divorce decree alleging that Paul had committed constructive fraud in failing to disclose his ownership interest in CAC Properties during the divorce proceedings. On May 4, 2020, the trial court entered an order finding that Paul had committed constructive fraud in failing to disclose the property upon divorce and endeavored to award Bridget her equal share of the property. Both parties appealed from that order, and in *Reesnes v. Reesnes* (*Reesnes I*), 2022 Ark. App. 462, 655 S.W.3d 722 (2022), we held that the trial court correctly found it had jurisdiction to modify the divorce

decree but that the trial court's distribution of the property was inequitable and must be reversed and remanded for further proceedings. After our remand, the trial court entered a nonfinal interlocutory order from which Bridget appealed, and that appeal was dismissed by this court without prejudice on November 9, 2023. After our dismissal of the second appeal, the trial court entered a final judgment on December 2, 2024, that awarded Bridget $318,163 for her interest in the property.

Bridget now appeals from the December 2, 2024 order. Bridget argues that the trial court erred in its distribution of CAC Properties, erred in denying her request for prejudgment interest, and erred in denying her request for attorney's fees. We agree with each of these arguments, and we reverse and remand.

I. *Introduction*

During the divorce proceedings in 2009, Paul was represented by an attorney while Bridget was not. The PSA drafted by Paul and his attorney, which was incorporated into the divorce decree, provided, inter alia, that "Husband and Wife agree that it is the intention of the Husband and Wife that this Agreement constitutes a full and complete settlement of all property rights, both real, personal and mixed, occurring to them by reason of said marriage." The divorce decree signed by the parties provides that "each party hereby warrants and affirms that each of them has disclosed any and all property, whether marital or not, to the other party." Let's be clear—as found by the trial court—Paul committed constructive fraud when he omitted CAC Properties from the PSA, which he and his attorney drafted and

2

filed.[1]  Paul defrauded his wife, his attorney,[2] and the trial court.  Paul continued his fraud when, within a few months of entering into the PSA and filing the divorce decree, he received $100,000 in dividend distributions from CAC Properties and, over the course of the next ten years, when he continued to receive, at a minimum, an additional $725,000 in dividend distributions, none of which were shared with his now ex-wife.  In *Reesnes I*, in an unusual 6–0 six-judge opinion, we concluded:  "We therefore reverse and remand for the trial court *to distribute the ownership of Paul's interest in CAC Properties one-half to each party as of the date of divorce* and for further proceedings consistent with this opinion."  *Reesnes I*, 2022 Ark. App. 462, at 17, 655 S.W.3d at 731 (emphasis added).

On remand, the trial court did not distribute the ownership of Paul's interest in CAC Properties one-half to each party as of the date of the divorce as ordered.  Paul owned 50 percent of CAC Properties; therefore, on remand, the trial court should have awarded Bridget 25 percent of CAC Properties and Paul 25 percent of CAC Properties.  In *Reesnes I*, we included the phrase "as of the date of divorce" so the trial court would not order Bridget's ownership to commence from the date of the trial court's 2020 order or the date of the court of appeals opinion.  Bridget's interest attached on the date of the 2009 divorce decree when she was defrauded; otherwise, Paul would have benefited from ten years of fraudulent conduct.  To summarize our disposition of this matter, we hold the following:

---

[1]See *Reesnes I* for additional details.

[2]Paul's attorney testified at an earlier hearing that in preparing the PSA, Paul did not inform him of Paul's interest in CAC Properties.

1.   The trial court shall enter an order granting Bridget a 25 percent membership interest in CAC Properties, effective August 13, 2009.

2.   The trial court shall enter a judgment in favor of Bridget against Paul in the amount of $50,000 plus prejudgment interest accruing from the date Paul received the $100,000 dividend distribution from CAC Properties.

3.   The trial court shall enter a judgment in favor of Bridget against Paul in the amount of $362,500 plus prejudgment interest accruing from the respective dates Paul received the $725,000 in dividend distributions from CAC Properties.

4.   On remand, if the trial court determines that Paul received any additional dividend distributions, then the trial court shall enter a judgment in favor of Bridget against Paul in the amount of one-half of any such distributions received plus prejudgment interest accruing from the dates Paul received the additional distributions.

5.   The trial court shall order Paul to provide an accounting for all the distributions and the sale(s) of any CAC Properties assets commencing on August 13, 2009, to the present.

6.   The trial court shall order Paul to pay Bridget reasonable attorney's fees to be determined by the court.

Finally, we acknowledge that our disposition of this matter may result in other future consequences, such as amended tax returns or causes of actions. Those matters, if any, are outside the scope of this opinion and are not discussed herein.

## II. *Discussion*

Bridget raises three arguments in this appeal. First, Bridget argues that the trial court erred in its distribution of CAC Properties and that the amount of the award was inequitable. Next, she contends that the trial court erred in not awarding her prejudgment interest. Finally, Bridget argues that the trial court erred in not awarding her attorney's fees and costs. We agree, and we reverse the trial court's order.

4

A summary of our decision in *Reesnes I* is necessary for our review of this appeal. When the parties divorced in 2009, as described above, the parties executed a PSA wherein both parties warranted that they had disclosed all their property.[3] The PSA addressed Paul's 50 percent ownership of Custom Aircraft Cabinets, Inc. (CA Cabinets), and provided that Bridget would receive half of Paul's dividend distributions from this company and that her right to receive these dividends would continue until the business was sold, in which event Bridget would receive 50 percent of the sale proceeds of Paul's ownership interest. However, during the divorce proceedings, Paul did not disclose his 50 percent ownership in a separate entity, CAC Properties, so that company was not mentioned in the parties' PSA or divided upon divorce.

Paul made his annual payments to Bridget from 2009 to 2016, when he stopped making the annual payments emanating from CA Cabinets. In 2019, Bridget retained an attorney and filed a motion for contempt against Paul generally alleging that Paul failed to make these annual distribution payments as agreed in the PSA. Bridget discovered during Paul's deposition in the contempt proceeding that Paul owned a 50 percent interest in a separate company, CAC Properties, LLC, during their marriage, which rendered Paul's ownership interest in CAC Properties marital property at the time of the divorce. Bridget then filed a motion to modify the divorce decree alleging fraud and asking for an equitable division of that property. After a hearing, the trial court entered an order on May 4, 2020,

---

[3]The PSA was incorporated, but not merged, into the divorce decree.

finding that Paul had committed constructive fraud, and it awarded Bridget $180,000 for her marital interest in Paul's ownership interest in CAC Properties as of the time of divorce,[4] plus $33,333 for her interest in a $100,000 distribution paid from CAC Properties to Paul in 2009, for a total judgment of $213,333.

Paul appealed from the May 4, 2020 order, and Bridget cross-appealed. Paul argued on appeal that the trial court lacked jurisdiction to modify the divorce decree. In her cross-appeal, Bridget argued that the methodology used by the trial court in arriving at her share of CAC Properties resulted in an inequitable division of marital property. This was *Reesnes I.*

In *Reesnes I*, we cited Arkansas Rule of Civil Procedure 60(c)(4) and held that the trial court had jurisdiction to modify the divorce decree based on Paul's constructive fraud for failing to disclose his ownership interest in CAC Properties. In addressing Bridget's cross-appeal concerning the trial court's distribution of the property, we noted that Paul's constructive fraud deprived Bridget of her interest in CAC Properties for more than ten years and that testimony at the hearing showed that since the parties' divorce, Paul had been paid a total of $825,000 in dividend distributions from that company. We agreed with Bridget's argument that the trial court's methodology in dividing CAC Properties resulted in an unequal distribution to Bridget. We reversed the trial court's methodology on cross-

---

[4]The award of $180,000 was derived from the testimony of Paul's accountant, who testified that at the time of divorce, the value of CAC Properties before discounts was $720,000, which would make Paul's interest $360,000.

6

appeal and stated that, in arriving at its judgment on remand, the trial court should consider all evidence relevant to the value of Bridget's interest in CAC Properties, including the distributions generated by CAC Properties after the parties' divorce. Our opinion concluded:

> We reverse the trial court's decision because we are left with a definite and firm conviction that a mistake has been committed in its property division. To allow Paul to receive all of his interest in CAC Properties—a $360,000 value—in addition to ten plus years of dividend distributions totaling $825,000—as compared to Bridget receiving only $180,000 for her interest in CAC Properties would result in an inequitable division of marital property, which we hold was clearly erroneous.
>
> . . . .
>
> *We therefore reverse and remand for the trial court to distribute the ownership of Paul's interest in CAC Properties one-half to each party as of the date of divorce and for further proceedings consistent with this opinion.*

*Reesnes I*, 2022 Ark. App. 462, at 17, 655 S.W.3d at 731 (emphasis added).

Following our remand in *Reesnes I*—on December 16, 2022—Bridget filed a motion for entry of amended and substituted order in conformity with the court of appeals mandate. In that motion, Bridget asked to be awarded one-half of Paul's 50 percent interest in CAC Properties as of the date of divorce and requested a judgment for 50 percent of all distributions Paul received from 2009 through the present. Bridget also requested prejudgment interest and attorney's fees. On January 3, 2023, Paul responded to Bridget's motion.

On March 7, 2023, the trial court circulated to the parties a draft order and asked the parties to share their thoughts about the draft. The draft order would have awarded Bridget

7

a 50 percent interest in Paul's 50 percent interest in CAC Properties as of the date of the divorce and would have awarded Bridget one-half of the $825,000 in dividend distributions paid to Paul from 2009 through 2018, as well as one-half of any dividends paid to Paul since 2019. On March 17, 2023, Bridget responded and generally agreed with the draft order in addition to again requesting prejudgment interest and attorney's fees.

On March 21, 2023, Paul responded and objected to the draft order in various respects. Paul stated that at the time of the divorce in 2009, CAC Properties consisted of a building on Firestone Lane leased to CA Cabinets, some adjacent land, and some cash with a total value of $720,000. Paul stated that three years after the divorce, in 2012, CAC Properties purchased a much larger building on Landers Road that was primarily financed by loans personally guaranteed by Paul and his business partner and resulted in increased rental income received by CAC Properties. Paul stated that funds to pay the CAC Properties distributions were in part generated from the sale of some of the real estate existing at the time of the divorce as well as rental income from the Landers Road property, which he argued should be deducted from Bridget's share of the distributions. Paul also asserted that in arriving at Bridget's interest in CAC Properties, the trial court should consider the tax consequences of the dividend distributions. On March 21, 2023, Bridget responded to Paul's objections to the draft order, stating that Paul's proposals were contrary to our mandate in *Reesnes I* to award her a 50 percent interest in Paul's interest in CAC Properties without any reductions.

8

On May 1, 2023, the trial court entered an amended and substituted order that largely aligned with Paul's proposals. In that order, the trial court made these findings:

1. At the time of divorce, CAC's assets consisted primarily of a building on Firestone Lane, adjacent land in the Marche area of Pulaski County, a lease of the Firestone Lane Property and some cash (collectively, the "CAC Assets") worth $720,000.00. [Bridget's] share was valued at $180,000 (Bridget's Share).

2. Bridget was deprived of the use of Bridget's Share for more than 10 years due to [Pauls'] constructive fraud and is entitled to be compensated for the loss of use in addition to receiving Bridget's Share.

3. Bridget is awarded a 25% equitable interest in CAC ("Equitable Interest"). The Equitable Interest does not include the real property and building located on Landers Road in North Little Rock ("Landers Road Property") nor any rental income derived therefrom. The Landers Road Property was acquired after the divorce. Defendant played no role in acquisition, preservation or operation and no CAC Assets were used to acquire this property.

4. Equitable Interest shall consist of:

(a) Bridget's Share;

(b) $50,000.00 from the $100,000.00 CAC distribution made to Paul in 2009 ("2009 Distribution");

(c) One-half of the $725,000.00 in CAC distributions received by Paul after the 2009 Distribution through December 31, 2018 ($725,000.00 Distributions"), excluding the amount of such distributions attributable to proceeds from the sale of any CAC assets; and

(d) One-half of any CAC distributions received by Paul after the $725,000.00 Distributions ("Future Distributions"), excluding the amount of such distributions attributable to proceeds from the sale of any CAC assets.

Provided, however, the amounts excluded from the $725,000.00 Distributions and Future Distributions for amounts attributable to the sale of CAC Assets in subsections (c) and (d) above shall not exceed the amount of Bridget's Share.

5. Bridget's Equitable Interest shall be reduced by:

(a) Any taxes Bridget would have paid on Bridget's part of the 2009 Distribution or the $725,000.00 Distributions;

(b) Any taxes Bridget would have paid on Bridget's part of Future Distributions Paul received prior to 2021 (the parties and CAC can file amended tax returns for the 2021 and subsequent tax years);

(c) Any amounts attributable to rentals received from Landers Road Property.

In the amended and substituted order, the trial court also ordered Paul to provide an accounting for all the distributions and the sale of any CAC Properties assets, after which Bridget's interest in the company would be reduced to a judgment.

On May 20, 2023, Bridget filed a notice of appeal from the May 1, 2023, amended and substituted order. However, Bridget later filed a motion in this court to dismiss the appeal without prejudice because the trial court had ordered an accounting and had not yet fixed the amount of the judgment, thus rendering the order nonfinal for purposes of appeal. We agreed with Bridget, and on November 9, 2023, we dismissed that appeal without prejudice, and the proceedings resumed in the trial court.

In compliance with the May 1, 2023, amended and substituted order, Paul filed an accounting.[5]  This accounting contained a single-page accounting summary that purported to calculate Bridget's interest in CAC Properties, and it included in the calculation her $180,000 share in the value of the company as of the time of divorce as well as the

_____

[5]Paul's accounting was filed in the trial court on June 29, 2023.

10

postdivorce dividend distributions.  It also contained reductions for dividend distributions attributable to CAC asset sales, dividend distributions attributable to Landers Road property, and taxes attributable to amounts received before 2021.   With these considerations, the accounting summary put the total value of Bridget's interest in CAC Properties at only $318,163.

After our dismissal of the second appeal—on February 7, 2024—Bridget filed a motion to reconsider and revise the May 1, 2023, amended and substituted order before issuance of a final judgment.  In her motion to reconsider, Bridget asked the trial court to revise the amended and substituted order and award Bridget her entire 50 percent interest in Paul's 50 percent interest in CAC Properties without reductions, which included one-half of all of Paul's dividend distributions.  In that motion, Bridget also requested prejudgment interest and attorney's fees.  On March 11, 2024, Paul responded to Bridget's motion to reconsider.  In his response, Paul asked that Bridget's motion be denied and that Bridget's interest in CAC Properties be reduced to a final judgment consistent with the trial court's May 1, 2023, amended and substituted order and Paul's accounting.

On December 2, 2024, the trial court entered a final judgment pursuant to amended and substituted order wherein it denied Bridget's motion for reconsideration and incorporated the amended and substituted order into the judgment.  In the final judgment, the trial court noted that Bridget had no objection to the accuracy of Paul's accounting, and it attached Paul's single-page accounting summary to the judgment.  The trial court credited and tracked this summary in arriving at Bridget's equitable interest in CAC Properties.  As

11

set forth in the accounting summary, Bridget was awarded $180,000 as her interest in the value of the company as of the time of divorce. Bridget was awarded $50,000 as her half of the $100,000 distribution received by Paul in 2009. She was also awarded one-half of the $725,000 in distributions received by Paul from 2010 through 2018 ($362,500), but that amount was reduced by $177,982[6] in distributions attributable to CAC Properties asset sales during that period, resulting in a net award of $184,518 for those distributions. Bridget was awarded one-half of the $400,000 in distributions received by Paul from 2019 through 2022 ($200,000), but that amount was reduced by $2018 due to distributions attributable to CAC Properties asset sales during that period and other adjustments, resulting in a net award of $197,982 for those distributions. The account summary then reduced Bridget's interest in the distributions by an additional $233,426, which correlated to one-fourth of the distributions attributable to the Landers Road property between 2011 and 2022. Finally, Bridget's interest was further reduced by the taxes attributable to the distributions prior to 2021, which totaled $60,911. Adding all the credits and then subtracting the reductions, as reflected on the accounting summary, the trial court arrived at $318,163 as Bridget's equitable interest in CAC Properties. In the final judgment, the trial court awarded Bridget a judgment against Paul for $318,163 plus postjudgment interest. The trial court denied Bridget's request for prejudgment interest and attorney's fees without comment.

---

[6]In this calculation and in other calculations on the account summary, the reduction represented one-fourth of the total distributions to account for Bridget's 25 percent interest (with respect to this figure of $177,982, the total distributions attributable to CAC Properties asset sales were $711,926).

Bridget timely appealed from the December 2, 2024 final judgment.  On appeal, Bridget raises these three arguments: (1) the trial court erred in its distribution of CAC Properties and the amount of the award was inequitable; (2) the trial court erred in not awarding her prejudgment interest; and (3) the trial court erred in not awarding her attorney's fees and costs.

A.  The Trial Court's Distribution of Bridget's Ownership Interest in CAC Properties

Bridget's first argument is that the trial court erred in its distribution of her interest in CAC Properties.  She asserts that our mandate in *Reesnes I* ordered the trial court on remand to distribute Paul's interest in the company one-half to each party as of the date of divorce and that the trial court failed to adhere to our mandate.  Bridget argues that the reductions from the CAC Properties distributions that were argued by Paul on remand and adopted by the trial court violated the law-of-the-case doctrine.  She argues that instead of awarding her one-half of Paul's interest in CAC Properties as of the date of divorce and entering a judgment in her favor for one-half of all distributions paid to Paul since their divorce in 2009, the trial court awarded Bridget only an "equitable interest," which drastically reduced her interest in CAC Properties and was contrary to our mandate.  Bridget argues that she should have been awarded one-half of *all* of Paul's dividend distributions.[7]

---

[7]We note that under this point Bridget also argues that, to the extent the trial court relied on an amended and restated operating agreement of CAC Properties that purported to restrict Paul from transferring his interest in the company, this was erroneous and resulted in prejudice.  However, it is not apparent that the trial court relied on this document in arriving at its decision, nor was it discussed in its orders being appealed.

13

We begin our discussion by addressing the law-of-the-case doctrine because it is dispositive. The venerable doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *Ozarks Elec. Coop. Corp. v. Stanley*, 2025 Ark. App. 469, 725 S.W.3d 219. The doctrine serves to effectuate efficiency and finality in the judicial process. *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002). The doctrine provides that a decision of an appellate court establishes the law of the case for the trial on remand and for the appellate court itself on subsequent review. *Id.* On the second appeal, the decision of the first appeal becomes the law of the case and is conclusive of every question of law or fact decided in the former appeal and also of those that might have been, but were not, presented. *Id.* The law-of-the-case doctrine is conclusive only where the facts on the second appeal are substantially the same as those involved in the prior appeal and does not apply if there was a material change in the facts. *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 91 Ark. App. 290, 210 S.W.3d 126 (2005).

Applying the law-of-the-case doctrine to this case, we hold that on remand from *Reesnes I*, the trial court erred in its distribution of CAC Properties. In *Reesnes I*, we directed the trial court on remand to distribute the *ownership* of Paul's interest in CAC Properties one-half to each party as of the date of the divorce. We did not direct the trial court to distribute the *value* of CAC Properties or determine Bridget's equitable interest. Recall that at the time of the divorce, Bridget was unaware that CAC Properties (which was undisputedly marital property) even existed and was certainly unaware that Paul had a 50 percent ownership of the company. In *Reesnes I*, we did not address Paul's accountant's $720,000

14

valuation of CAC Properties (and the corresponding one-fourth award of $180,000 to Bridget), stating that the issue was moot and irrelevant given our disposition of the appeal and our directions on remand. We held that, regardless of what CAC Properties was worth, Bridget was entitled to a one-fourth ownership interest, which was the law of the case and was binding on the trial court on remand.

After the case was remanded, Bridget filed a motion requesting an order that distributed the ownership of Paul's 50 percent interest in CAC Properties one-half to each party as of the date of divorce. Bridget claimed entitlement to one-half of the $825,000 in postdivorce distributions received by Paul from 2009 through 2018 as well as one-half of any distributions paid to Paul since 2019. This was consistent with our directive in *Reesnes I* and, in fact, was what the trial court had proposed in its original draft order submitted to the parties for comment. However, after Paul objected to the proposed order and raised various objections, the trial court changed direction and drastically reduced Bridget's one-half share in the distributions. We hold that this conflicted with our mandate in *Reesnes I* and was precluded by the law-of-the-case doctrine.

We agree with Bridget that the law-of-the-case doctrine requires the trial court to award her a 25 percent membership interest in CAC Properties as of the date of the divorce. Therefore, we reject the trial court's methodology in distributing Bridget's ownership interest and we remand for the trial court to award Bridget one-half of the $825,000 in distributions received by Paul from 2009 to 2018 as well as one-half of any additional distributions received by Paul since then. And, as explained in section B below, Bridget's share of the

15

distributions shall also bear prejudgment interest from the date of each distribution. To this end, the trial court shall order Paul to provide an accounting for all the distributions and the sale(s) of any CAC Properties assets commencing on August 13, 2009, to the present.

## B. Prejudgment Interest

Bridget's next argument is that the trial court erred in denying her request for prejudgment interest. Bridget argues that prejudgment interest should have been awarded on her share of each distribution received by Paul because these amounts were definitely ascertainable by mathematical computation. We agree that prejudgment interest should have been awarded with respect to Bridget's share for each of these distributions.

Arkansas Code Annotated section 6-65-114(a)(1) (Repl. 2021) provides that a judgment entered by a court shall bear postjudgment interest and, *if appropriate under the facts of the case, prejudgment interest*. In *DWB, LLC v. D&T Pure Trust*, 2018 Ark. App. 283, at 15, 550 S.W.3d 420, 431, we recited the following law on prejudgment interest:

> Prejudgment interest is intended to be compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *Dorsett v. Buffington*, 2013 Ark. 345, 429 S.W.3d 225. The test for whether an award of prejudgment interest is proper is whether there is a method to determine the value of the property at the time of the injury. *Lovell v. Marianna Fed. Sav. & Loan Ass'n*, 267 Ark. 164, 589 S.W.2d 577 (1979). Prejudgment interest "is only allowable if the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion." *See* Howard W. Brill, *Arkansas Law of Damages* § 10:3, at 175 (6th ed. 2014). If damages are not by their nature capable of exact determination, both in time and amount, prejudgment interest is not an item of recovery. *Lovell, supra.* The award of prejudgment interest is a question of law to be decided by the court on a de novo review. *Spann v. Lovett & Co., Ltd.*, 2012 Ark. App. 107, 389 S.W.3d 77.

Howard W. Brill, *Arkansas Law of Damages* § 10:3, states:

16

The justification for prejudgment interest is that an injured party is entitled to have the use of his money (or property) from a particular day. Deprived of that use, he has suffered a loss that can only be compensated by substitutionary relief in the form of interest.

Prejudgment interest *must* be allowed for any injury where, at the time of loss, damages are immediately ascertainable with reasonable certainty. *TB of Blytheville, Inc. v. Little Rock Sign & Emblem, Inc.*, 328 Ark. 688, 946 S.W.2d 930 (1997). Where prejudgment interest is collectible at all, the injured party is *always entitled to it as a matter of law. Id.*

In its final judgment, the trial court denied Bridget's request for prejudgment interest without explanation. In our de novo review, we conclude that this was erroneous because these distributions are capable of exact determination, both in time and amount. The amount to be awarded Bridget for each distribution is ascertainable by mathematical computation without reliance on opinion or discretion. Accordingly, on remand we direct the trial court to award prejudgment interest on Bridget's one-half interest in the distributions accruing from the date Paul received each distribution.

## C. Attorney's Fees and Costs

Bridget's remaining argument is that the trial court abused its discretion in denying her request for attorney's fees and costs. Bridget asserts that this is a postdivorce domestic-relations proceeding in which the trial court had the inherent authority to award attorney's fees and that it should have done so under the circumstances of this case, particularly in light of Paul's fraudulent failure to disclose the existence of CAC Properties during the parties' divorce. We agree that the trial court erred in denying Bridget's request for attorney's fees.

17

It is well settled that the trial court has the inherent power to award attorney's fees in domestic-relations proceedings. *Hargis v. Hargis*, 2019 Ark. 321, 587 S.W.3d 208. Our supreme court has held that we are to generally recognize the trial court's superior perspective in determining whether to award attorney's fees due to its intimate acquaintance with the record and the quality of services rendered. *Id.* There is no fixed formula for determining what constitutes a reasonable amount of attorney's fees, and pertinent considerations can include the attorney's judgment, learning, ability, skill, experience, and professional standing; the relationship between the parties and the importance of the subject matter of the case; the nature, extent, and difficulty of services; and the research, anticipation of defenses, and means of meeting them. *Goodson v. Bennett*, 2018 Ark. App. 444, 562 S.W.3d 847. Additionally, the relative financial ability of each party is a consideration, but it is not determinative. *Id.* The decision to award attorney's fees is accordingly a matter within the trial court's discretion. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. We will not disturb a trial court's decision regarding attorney's fees absent an abuse of discretion. *Vice v. Vice*, 2016 Ark. App. 504, 505 S.W.3d 719. Discretion is abused when it is exercised improvidently, thoughtlessly, and without due consideration.

After the trial court entered the judgment in the first round of litigation in *Reesnes I*, Bridget filed a motion for attorney's fees and alleged that her counsel had spent 324.7 hours on the postdivorce proceedings and that she had incurred a total of $82,920.50 in attorney's fees. Attached to her motion was an affidavit of a local attorney stating that the fee amount was fair and reasonable. However, no attorney's fees were awarded at that time.

18

After our remand in *Reesnes I* for reconsideration of Bridget's interest in CAC Properties, Bridget filed multiple pleadings wherein she again requested attorney's fees. Notably, in a motion filed on February 7, 2024, Bridget requested attorney's fees and argued, "[T]his court has clear authority to award Bridget her attorney's fees, and should award Bridget's attorney's fees and costs in this matter, as it was Paul's constructive fraud that led to Bridget's incurrence of substantial fees when CAC Properties should have been disclosed and divided in the Decree in 2009." In the trial court's final judgment entered on December 2, 2024, it simply denied Bridget's request for attorney's fees without comment.

Under the unique circumstances presented herein, we hold that Bridget's request was denied improvidently, thoughtlessly, and without due consideration. One of the fundamental purposes behind an award of attorney's fees is to place the burden of litigation expenses upon the party who made it necessary. *See Ark. Game & Fish Comm'n v. Gerard*, 2018 Ark. 97, 541 S.W.3d 422 (citing *Cleek v. Great S. Metals*, 335 Ark. 342, 981 S.W.2d 529 (1998)). Had Paul not fraudulently concealed the existence of his interest in CAC Properties at the time of the parties' divorce in 2009, the property would have been divided then, and none of this multiyear litigation would have been necessary. As a result of Paul's constructive fraud—and in order to acquire her rightful interest in the company—Bridget had to file a new action; litigate the issues therein, which included Paul's claim that the trial court lacked jurisdiction to modify the decree; appeal the trial court's original judgment; prevail in the first appeal; and then continue to litigate her interest in the company on remand. And to date, Bridget has been awarded zero attorney's fees associated with this litigation.

19

The only reason Bridget retained an attorney for this litigation was because Paul fraudulently took advantage of his unrepresented wife in the divorce proceedings. And Paul enjoyed the benefits of his fraud for ten years before Bridget became aware of the fraudulent conduct. As set forth above, one of the fundamental purposes behind an award of attorney's fees is to place the burden of litigation expenses upon the party who made it necessary. *See Ark. Game & Fish Comm'n v. Gerard*, 2018 Ark. 97, 541 S.W.3d 422 (citing *Cleek v. Great S. Metals*, 335 Ark. 342, 981 S.W.2d 529 (1998)). Paul clearly made all of Bridget's litigation fees and expenses necessary, and on remand, we direct the trial court to award Bridget a reasonable attorney's fee.[8]

### III. *Conclusion*

In conclusion, we hold that the trial court's distribution of Bridget's ownership interest in CAC Properties was contrary to the law of the case as established by this court in *Reesnes I*, and therefore, that the trial court erred in its distribution. Furthermore, we hold that the trial court erred in denying Bridget's requests for prejudgment interest and attorney's fees. Accordingly, we reverse and remand with the following instructions to the trial court: (1) enter an order granting Bridget a 25 percent membership interest in CAC Properties, effective August 13, 2009; (2) enter a judgment in favor of Bridget against Paul in the amount of $50,000 plus prejudgment interest accruing from the date Paul received

---

[8]In awarding the attorney's fees, we direct the trial court to our recent discussion and holding in *Hopping v. Scarborough*, 2026 Ark. App. 303, regarding attorney's fees in domestic-relations cases.

the $100,000 dividend distribution from CAC Properties; (3) enter a judgment in favor of Bridget against Paul in the amount of $362,500 plus prejudgment interest accruing from the dates Paul received the $725,000 in dividend distributions from CAC Properties; (4) if the trial court determines on remand that Paul received any additional dividend distributions, then the trial court shall enter a judgment in favor of Bridget against Paul in the amount of one-half of any such distributions received plus prejudgment interest accruing from the dates Paul received the additional distributions; (5) order Paul to provide an accounting for all the distributions and the sale(s) of any CAC Properties assets commencing on August 13, 2009, to the present; and (6) order Paul to pay Bridget reasonable attorney's fees to be determined by the court.

Reversed and remanded.

KLAPPENBACH, C.J., and VIRDEN, HARRISON, and TUCKER, JJ., agree.

GLADWIN, J., concurs in part and dissents in part.

**ROBERT J. GLADWIN, Judge, concurring in part and dissenting in part**. I agree with the majority that the circuit court erred in its distribution of CAC Properties and in its denial of Bridget Reesnes's request for prejudgment interest, and we must reverse and remand for those purposes. However, I disagree with the majority's conclusion that the circuit court abused its discretion in denying Bridget's request for attorney's fees.

This decision is especially disturbing in the wake of this court's recent decision, *Hopping v. Scarborough*, 2026 Ark. App. 303, at 5–6. In *Hopping*, the majority reversed and remanded the circuit court's award of attorney's fees on the basis of an insufficient record

21

because the order did "not provide this court with any reasoning on which the court's fee award [could] be effectively evaluated"; and I dissented. Here, the circuit court denied Bridget's motion for attorney's fees without *any* findings, but the majority has no compunction in holding that "Bridget's request was denied improvidently, thoughtlessly, and without due consideration" and then directing the circuit court "to award Bridget a reasonable attorney's fee[]." If the record in *Hopping* did not provide a sufficient basis for our review, how can that be reconciled with the majority's decision here—substituting its judgment for that of the circuit court—concluding that the circuit court must award Bridget attorney's fees? Further, if the circuit court on remand awards Bridget $500 in attorney's fees, will this case be before the court yet again on the reasonableness of the award?

As I stated in my dissent in *Hopping*, the majority here has likewise substituted its judgment for the circuit court's and further compounds the confusion as to what constitutes a reviewable basis for attorney's-fee awards. From these two cases, I am left with the impression that despite well-established precedent––attorney's fees in domestic-relations cases are not awarded as a matter of right but only at the circuit court's discretion––this court not only declines to defer to the circuit court's superior ability to determine whether attorney's fees should be awarded but also chooses to substitute its opinion whenever it wishes. If we conclude that the findings are insufficient, we will reverse and remand for more specific findings; if we conclude that despite any findings at all, the court abused its discretion and *must* award attorney's fees, we will reverse with instructions that the court award "reasonable" attorney's fees.

The majority also states that the appellee, Paul Reesnes, "clearly made all of Bridget's litigation fees and expenses necessary" as the result of his fraud; thus, he should bear some portion of the expense. This conclusion does not consider the fact that, in the prior appeal, this court recognized the circuit court's order that "Paul to pay Bridget $2,500 in attorney's fees as a sanction for contempt" in the underlying contempt proceedings. *Reesnes v. Reesnes*, 2022 Ark. App. 462, at 3, 655 S.W.3d 722, 725–26. Accordingly, Paul has borne some portion of the litigation expense. Without specific findings, we cannot know whether the circuit court took this into consideration in denying attorney's fees after remand; yet the majority holds that attorney's fees must be awarded because Paul deserved it.

My concern, both here and in *Hopping*, is that the court has created more confusion for the bench and bar. We no longer credit the superior perspective of the circuit court to observe the parties, their level of cooperation, and their obedience to court orders over the entire proceedings; instead, we stand in the shoes of the circuit courts and afford their findings, or lack thereof, no consideration.

For the foregoing reasons, I concur in part and dissent in part.

*The Applegate Firm, PLLC*, by: *Kayla M. Applegate*; and *James, House, Swann & Downing, P.A.*, by: *Patrick R. James*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*; *Stan D. Smith*; *Lance R. Miller*; and *Timothy Frith*, for appellee.

23